**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 10-81589-CIV-HURLEY/HOPKINS**

SANCTUARY SURGICAL CENTRE, LLC,
GLADIOLUS SURGICAL CENTER, LLC,
PHYSICIANS SURGICAL GROUP, LLC,
NAPLES PHYSICIANS SURGICAL GROUP, LLC,
PSG OF S. FLORIDA, LLC, PHYSICIANS SURGICAL
GROUP OF BOCA, LLC,

        Plaintiffs,

vs.

UNITED HEALTHCARE, INC.,

        Defendant.

_____/

**PLAINTIFFS SANCTUARY SURGICAL CENTRE, INC., GLADIOLUS
SURGERY CENTER, LLC, PHYSICIANS SURGICAL GROUP, LLC,
NAPLES PHYSICIANS SURGICAL GROUP, LLC, PSG OF S. FLORIDA, LLC,
AND PHYSICIANS SURGICAL GROUP OF BOCA RATON, LLC'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
UNITEDHEALTHCARE, INC.'S MOTION TO DISMISS**

Plaintiffs Sanctuary Surgical Centre, Inc., Gladiolus Surgical Center, LLC, Physicians Surgical Group, LLC, Naples Physicians Surgical Group, LLC, PSG of South Florida, LLC, and Physicians Surgical Group of Boca Raton, LLC (collectively referred to as "Plaintiffs")  respectfully submit this Memorandum of Law in opposition to the motion of defendant UnitedHealthcare, Inc's. ("UnitedHealth") to dismiss Plaintiffs' First Amended Complaint ("FAC").

## PROCEDURAL HISTORY

Plaintiffs filed their initial complaint against United Healthcare, Inc, Aetna, Inc, and CIGNA, in the action entitled Sanctuary Surgical Centre, Inc., et. al. v. United Healthcare Inc., et. al., Case No.: 10-81589-CIV-HURLEY/HOPKINS on  December 15, 2010.  In that complaint Plaintiffs alleged four causes of action pursuant to ERISA.  The first count against the defendants alleged violations of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) for failing to pay benefits under the terms of the respective insurance plans.  The second count alleged breaches of fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The third count alleged failure to provide a full and fair review under ERISA § 502(a)(3), 29 U.S.C. § 1133 and the fourth count alleged violations of federal common law ERISA equitable estoppel.

Following the filing of the complaint all three defendants filed motions to dismiss the complaint.   UnitedHealth and Aetna also filed motions to sever.  Following oral argument on the foregoing motions, the Court severed the cases and granted the motions to dismiss without prejudice.  (D.E. 65 Order Granting Defendants' Motions to Dismiss Without Prejudice ("Order").  Pursuant to the Order the Court ruled that Plaintiffs were permitted to file amended complaints (via three separate actions), in accordance with the

1

legal conclusions of the Order.  Order at 15.  The relevant legal conclusions made by the Court in the Order were as follows:

1. "To comply with the Requirements of Rules 8 and 10 [of the FRCP], plaintiffs must identify, *to the extent possible*, the patient, the condition the patient suffered from that necessitated the procedure, the specific ERISA plan that covered the patient, the term of the plan that defendant allegedly violated, and the date the procedure was performed."  Id. at 5, [emphasis added].

2. "To state their claim for wrongful denial of benefits, plaintiffs must allege that the MUAs were medically necessary, and not experimental or investigatory, in light of the specific medical conditions of each patient." Id. at 8.

3. "To properly state a claim for equitable estoppel, plaintiffs must identify the ambiguity on which they rely.  If plaintiffs are contending that no specific provision[s] were ambiguous, but that there was an "inherent ambiguity," plaintiffs must make such an allegation in the amended complaint."  Id. at 9.

4. The Court ordered the "full and fair review" claim to be repled due to the fact that the complaint failed to identify the plans or the plan terms with which the claim denials are inconsistent.  Id. at 10.

5. "Since the allegations in support of the breach of fiduciary duty claim are sufficient to state a claim for wrongful denial of benefits, the fiduciary duty claim is not appropriate and must be dismissed.  Defendants [sic] must replead their claim if it is based on plaintiffs'[sic] misrepresentations."  Id. at 11.

6. "To properly plead exhaustion [of remedies], plaintiffs must specify the action they took to exhaust their administrative remedies and the outcome of the action." Likewise, "To properly plead futility, plaintiffs must allege why exhausting their

administrative remedies would be futile and provide sufficient detail to make their claim of futility plausible." Id. at 13 and 15.

In accordance with the Court's directives and Order, the Plaintiffs amended and filed their First Amended Complaint on July 11, 2011, against UnitedHealth.

## STATEMENT OF FACTS

This dispute arises from UnitedHealth's many years of having made insurance payments to Plaintiffs for surgical services performed by medical doctors, known as manipulation under anesthesia ("MUA") that patients whom UnitedHealth covers have received by the Plaintiffs at the various facilities. See, FAC ¶ 14.  Plaintiffs are not participating providers in UnitedHealth's health insurance network but they do receive assignments of benefits from every patient.  See Id. ¶9, 20.

When a patient who is covered under health benefits plans that UnitedHealth administers seeks to undergo surgery, employees of Plaintiffs initiate a telephone dialogue with UnitedHealth to confirm with UnitedHealth the existence, nature and extent of the patient's out-of-network coverage.  See Id. ¶ 18.  In many patients' cases, after confirming the patient's out-of-network coverage, UnitedHealth provides to Plaintiffs a UnitedHealth authorization number for the patient's case.  See Id.  Plaintiffs will not proceed with a patient's MUA in cases in which UnitedHealth denies a necessary pre-authorization.  Id.

The payments to Plaintiffs ceased some years later when the Defendants began the process of issuing systematic denials on all claims it received from Plaintiffs.  Id. ¶ 22.  The claims were generally denied by Defendants for allegedly being experimental, investigatory, not medically necessary, or for not being a covered benefit under the plan. See Id.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (U.S. 2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937 (U.S. 2009) (establishing that Twombly's reasoning is applicable to pleadings in contexts other than the antitrust precepts that were at issue in Twombly).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556.

As long as the allegations in the complaint rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss, even if it appears that recovery is remote and unlikely. Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(overruled by other grounds by Twombly, 550 US at 548-49)    In reviewing a motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in the light most favorable to plaintiffs. M.T.V. v. Dekalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).   A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. U.S., 734 F.2d 762, 765 (11th Cir. 1984).

## ARGUMENT
### I.  UNITEDHEALTH'S MOTION SHOULD BE DENIED IN ITS ENTIRETY AS IT RELIES MOSTLY UPON EVIDENCE OUTSIDE OF THE PLEADINGS

With regard to the arguments advanced in sections II, and II of its Memorandum, UnitedHealth relies extensively upon the Declarations of Dale H. Ibitz, Mary Jo Legere,

Julie Darling and Ryan Pritchard (all UnitedHealth employees) and the summary plan descriptions attached thereto.  The Declaration of Christopher D. Catalano is even more inappropriate as it attaches an incomplete copy of the American Medical Association's Code Book of Reimbursable Procedures.  Those two arguments (specific plan terms and no plausible claim) should fail because they rely upon UnitedHealth's characterization of evidence that is outside of the pleading.  Such arguments are wholly inappropriate on a motion to dismiss under Rule 12(b)(6).

This court should not consider any of the foregoing Declarations and the documents annexed thereto as it is well within a judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the Court.  Jones v. Automobile Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1531-32 (11th Cir. 1990). UnitedHealth's reliance on such evidence outside the pleadings would convert this motion to a motion for summary judgment, which would be inappropriate since no discovery has taken place.  Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005)("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint.")  In ruling upon a motion to dismiss, the district court may only consider extrinsic evidence if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.  Id.

Although UnitedHealth contends that it is allowed to submit the Summary Plan Descriptions in support of this motion to dismiss, this Court should, and has the power to, disregard this extrinsic evidence.  First, as UnitedHealth acknowledges, this case involves over 950 claims, relating to more than 300 group plans.  See, UnitedHealth Memo. at 2. While UnitedHealth tries to argue that the court can consider these documents as they are central to Plaintiffs' claims, that statement is misleading.  To submit a total of six (6)

summary plan descriptions in connection with over 950 claims, is not even close to a fair representation of all the policy language and/or issues that could be presented to the court.

Likewise, Plaintiffs have alleged throughout their First Amended Complaint that UnitedHealth has violated the terms of various health care plans. Nowhere is it alleged that the Defendant violated various terms of the Summary Plan Descriptions in connection with for each plan. Summary Plan Descriptions are nothing more than interpretations of the actual plan language itself. These descriptions are not the actual plan that governs the terms and benefits for its members. ERISA defines the word "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). A Summary Plan Description, in contrast, is a disclosure meant "to reasonably apprise [plan] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Accordingly, the syntax of this provision suggests that the information about the plan provided by the disclosures is not part of the plan itself. CIGNA Corp. v. Amara, 131 S.Ct. 1866, 1877 (2011). Summary Plan Descriptions, important as they are, provide communications with beneficiaries *about* the plan, but that their statements do not themselves constitute *terms* of the plan…" Id. at 1878. Defendant's own documents concur with this reasoning.[1]

> "The SPD is only a summary of the healthcare benefits provided by the plans named above…The provisions of the plans are defined in the official plan documents, which govern the terms and operation of the plans. The summary in this SPD does not take the place of those documents." See, Decl. of Ibitz, Ex. 2, at 2.

---

[1] Plaintiffs object to the use of all of Defendant's Summary Plan Description exhibits as improper extrinsic evidence. However, in the event the Court disagrees and does consider these documents, Plaintiffs' reference to the documents throughout its Memorandum does not negate the general objection to UnitedHealth's use of these documents in support of its motion.

For these very reasons, Plaintiffs challenge the authenticity and relevancy of these documents, as used by UnitedHealth in support of its motion to dismiss.  UnitedHealth presents these documents to the Court as if they were the actual plans themselves, and contain authoritative language governing the rights and duties between the parties. Simply put, they do not.

Moreover, since the patients are not identified in connection with each of the summary plan descriptions filed, there is no way for Plaintiffs to confirm the genuineness of these documents.  Accordingly, all of UnitedHealth's arguments that rely extensively upon these documents should be denied as they are improper extrinsic evidence.

## II. PLAINTIFFS HAVE COMPLIED WITH THIS COURT'S ORDER AND IDENTIFIED, TO THE EXTENT POSSIBLE, THE TERMS OF THE PLANS THAT THE DEFENDANT VIOLATED IN BREACH OF ERISA.

Although UnitedHealth contends that the Plaintiffs have not identified any of the specific plan terms that it violated in its amended complaint, this argument is simply not true and is undermined by its own submissions in support of its motion. See, UnitedHealth Memo at 7-8.  Plaintiffs were ordered, *to the extent possible*, to identify the term of the plan(s) that defendant allegedly violated.  Order at 5. (emphasis added)  It was represented by the Plaintiffs at oral argument of UnitedHealth's first motion to dismiss, that the Plaintiffs did not have copies of their patients' plans, as is typically the case with the doctor/patient relationship.  Plaintiffs, various ambulatory surgical centers and medical service providers, are bringing this case pursuant to valid assignments of benefits.  Plaintiffs do not ask for, nor are they ever given, copies of the individual patient plans when the patients seek medical treatment from the Plaintiffs.  UnitedHealth's own documents even acknowledge as much.  Attached as Exhibit 1 to the Declaration of Ryan Pritchard is what is alleged to be the Reed Elsevier Enhanced SPD.  In that plan

description it advises every insured:  "Please be aware that your Physician does not have a copy of your SPD, and is not responsible for knowing or communicating your Benefits."  See, Pritchard Decl. Ex. 1 at 1.

Accordingly, since it was never a secret that Plaintiffs are not in possession of each patient's individual insurance plan documents, the Court ordered the Plaintiffs to allege in amended pleadings, the best they can, what plan term(s) UnitedHealth violated when it began issuing blanket denials on pre-certified MUA claims.  Plaintiffs have complied with that directive by alleging that the MUAs were "covered services or covered benefits under the relevant plans," See, FAC ¶ 17, that "[t]he terms of the health benefit plans at issue….obligate Defendant to make payment."  Id. at ¶ 31, and that "MUAs were covered services or covered benefits under the applicable plan(s)."  Id. at ¶ 52.

In support of its motion, UnitedHealth has included a Declaration from Julie Darling, a UnitedHealth employee who has access to template language filed for health plans in the state of Florida, that actually supports the Plaintiffs' point.  Darling Decl.  ¶¶ 3-4.  According to Ms. Darling, "In the template language for certificates of coverage ("COCs") for health plans based in Florida that UnitedHealth or its affiliates insure, only "*covered health services*" are allowed."  Id. at ¶4 (emphasis added).

Plaintiffs have alleged in their First Amended Complaint that UnitedHealth violated the terms of its plans by refusing to pay for the MUAs that were preapproved as "covered services" or "covered benefits" under the applicable health plans.  UnitedHealth has acknowledged that language referring to "covered health services" is contained within its template language that is filed with the State of Florida and applicable to every plan and that only "covered health services" are allowed.  Accordingly, UnitedHealth's

argument that Plaintiffs failed to identify any specific plan term is disingenuous and must fail, in light of the fact that Plaintiffs allege throughout its amended pleading that Plaintiffs initially approved the MUAs as covered services and then later denied all claims, in violation of its own plan terms.  Although UnitedHealth may disagree with Plaintiffs' position, Plaintiffs have complied with this Court's order.

## III.   PLAINTIFFS   HAVE   ALLEGED   PLAUSIBLE   CLAIMS   THAT UNITEDHEALTH DENIED THEIR MUA CLAIMS

UnitedHealth once again devotes a good part of its Memorandum attempting in vain to advance the argument that the First Amended Complaint must be dismissed in its entirety because Plaintiffs have not alleged any facts that suggest UnitedHealth's decision to deny coverage for the MUAs violated terms of the various health care plans.  See, UnitedHealth Memo. at 8.  Specifically, UnitedHealth is alleging that Plaintiffs have failed to allege any facts suggesting that the MUAs at issue are not experimental/investigational or medically necessary.  See, UnitedHealth Memo. at 9. UnitedHealth's argument is belied by specific and detailed factual allegations contained in the First Amended Complaint, as required by this Court's prior order, and by its own documents it has submitted in support of its motion.

### A. Defendants' Argument is Flawed Since it Relies Exclusively Upon Summary Plan Descriptions of Six Plans.

As stated in Point I above, Summary Plan descriptions are nothing more than summaries or descriptions of the plan itself.  Our Supreme Court has confirmed that these descriptions, are just that – descriptions and nothing more; they are not authoritative parts of the plans.  Since UnitedHealth relies exclusively upon the improper extrinsic evidence contained in the Summary Plan Descriptions, to make the argument that Plaintiffs have

not alleged that the MUA procedures were neither experimental, nor investigational, this argument should be disregarded by the Court.

**B.  Even if The Court Considers The Language Contained in the Summary Plan Descriptions, Such Language Supports the Contention that The Plaintiffs Have Alleged Sufficient Facts That UnitedHealth's Conduct Violated ERISA.**

As stated in Point II above, Plaintiffs have properly alleged that UnitedHealth violated the terms of the applicable plan policies when it refused to pay for MUAs as "covered benefits" or "covered services" as the procedures were neither experimental nor investigational for the specific conditions they were used to treat.  Moreover, Plaintiffs specifically allege that they discuss with UnitedHealth representatives "whether the patient has satisfied applicable requirements for authorizations," i.e. coverage requirements, to receive the MUA.  FAC ¶ 19.  Plaintiffs further allege that without these authorizations, "Plaintiffs will not go forward with the MUA."  Ibid.  These allegations, which must be taken as true (with all inferences drawn in Plaintiffs' favor) at this stage of the proceedings, establish that Plaintiffs would not perform a MUA surgery on a patient without first receiving assurances that the patient has satisfied all authorization requirements.

The purpose of these conversations between representatives of Plaintiffs and representatives of UnitedHealth was for the sole reason of ensuring that the patients' plans would cover their MUA procedure.  Plaintiffs have alleged that they would not proceed with an MUA without authorization from UnitedHealth.  It strains credulity, to believe that UnitedHealth would authorize a patient to receive an MUA if UnitedHealth believed that those procedures were experimental or not medically necessary.  These contentions are supported by the various Summary Plan Descriptions themselves that describe the procedures for obtaining preauthorization of medical services.

In the American Airlines SPD, there is a procedure known as "QuickReview (Pre-Authorization)" <u>See</u>, Ibitz Decl. Ex 1 at 57-58.  Quick Review will tell you:  "*Whether the proposed treatment is considered medically necessary and appropriate for your condition.*" (emphasis added).  It also states that "If you do not use QuickReview, your expenses are still subject to review and will not be covered under the Plan if they are considered not medically necessary." <u>Id.</u>  Thus, according to the SPD, medical necessity, a requirement for a covered service, is determined when a patient seeks preauthorization of medical services.

Likewise, the Delta Airlines SPD contains a similar provision that alerts subscribers as to when they must notify UnitedHealth's Customer service prior to receiving certain medical services.  <u>See</u>, Ibitz Decl. Ex 2 at 71-73.  For outpatient surgical services that require Notification (i.e. preapproval), the following information must be provided to UnitedHealth's Health Advocate Team:  the diagnosis, type of surgery and proposed course of treatment.

> After notification is received, the Health Advocate Team determines if the service or supply is a *Covered Service*.  A Covered Service is one that is:
> - Provided for the purpose of diagnosis or treatment of a sickness, injury, disease or symptom; and
> - Supported by national standards of practice; and
> - Consistent with conclusions of prevailing medical research
> <u>Id.</u> at 72-73.

Following the Notification of the proposed procedure UnitedHealth then "contacts your doctor to discuss symptoms, test results, the treatment plan…After your doctor provides the necessary medical information, the Notification review is completed in a matter of hours.  When the Notification review is complete, you may receive a phone call from UHC.  You, your doctor…also are notified by letter." <u>Id.</u> at 73

11

In short, by alleging that Plaintiffs requested preapprovals on all claims, and by alleging that they would not go forward with the MUA without the required preapproval, Plaintiffs have sufficiently alleged that the procedures were medically necessary, covered services, as evidenced by UnitedHealth's own preauthorization procedures as outlined above.  Plaintiffs further allege that UnitedHealth violated its duties to the Plaintiffs under ERISA by first deeming a procedure to be a medically necessary, covered service, and then reneging on that decision.

Contrary to UnitedHealth's arguments, Plaintiffs are not under a duty to allege that the MUAs were not experimental or investigational more than they already have done so in the pleadings.  The fact that UnitedHealth preapproved all claims, after detailed preapproval procedures,  and a past pattern of paying, is proof enough that it deemed the MUAs at issue to be a medically necessary, covered service or covered benefit.  Likewise, such conduct by UnitedHealth, as described in the First Amended Complaint is obviously an abuse of discretion.  The First Amended Complaint's many pages of factual allegations unquestionably gives UnitedHealth "a short and plain statement of the claim showing that the pleader is entitled to relief," which is all that the notice pleading standard of Rule 8(a)(2) requires.  In re Southeast Banking Corp., 69 F.3d 1539, 1551 (11th Cir. 1995).   As such, Plaintiffs' First Amended Complaint contains sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  No heightened pleading requirement exists for claims under ERISA.  Woods v. Southern Company, 396 F.Supp. 2d 1351, 1360 (N.D. Ga. 2005).  (as opposed to such  extremely detailed information being required on the face of the pleading).

All arguments advanced in this regard must fail as Plaintiffs have advanced "plausible claims."

## IV.  PLAINTIFFS MAY PURSUE THEIR CLAIMS FOR BREACH OF FIDUCIARY DUTY

UnitedHealth next tries to assert, erroneously, that the Plaintiffs do not have standing to pursue their breach of fiduciary duty claims.

### A. Plaintiffs Have Standing To Sue For Their Breach Of Fiduciary Duty Claims

It is a long standing principle that health care providers have standing to sue under the statutory scheme provided by ERISA in the 11th Circuit.  Under § 502(a)(1)(B) and § 1132(a)(1)(B), two categories of persons exist who can sue for benefits under an ERISA –governed plan: plan beneficiaries and plan participants.  § 1132(a)(1); Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001).  Generally, healthcare providers like Plaintiffs lack independent standing under ERISA's statutory scheme because they are not considered "beneficiaries" or "participants."  Id. at 1241; Cagle v. Bruner, 112 F.3d 1510, 1514 (11th Cir. 1997).  Healthcare providers may acquire derivative standing, however, by obtaining a written assignment from beneficiaries or participants of their right to payment under an ERISA plan.  Id.   Based upon the foregoing, UnitedHealth is not challenging the Plaintiffs' standing with regard to the majority of its claims because such an argument would be moot and could not be made in good faith.

However, UnitedHealth tries to assert, using the same exact arguments for the second time, that the Plaintiffs' breach of fiduciary duty claims must be dismissed for lack of standing because Plaintiffs' assignments only give them the right to sue for "benefits," and not for breach of fiduciary duty claims.  UnitedHealth Memo at 14.

Although UnitedHealth relies exclusively upon cases outside of the 11th Circuit to support its argument, those cases are distinguishable from this case, and in any event, are not precedent and need not be followed by this Circuit.  Defendant relies primarily upon the 5th Circuit case of Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entn't Co., 105 F.3d 210, 214 (5th Cir. 1997).  Texas Life involved a situation wherein a state insurance guaranty association argued that it had obtained an assignment to sue for breach of fiduciary duty claims through a state statute purporting to assign such claims by operation of law.  The guaranty association did not obtain an express assignment of rights; rather, it argued that the plan administrators assigned all of their policy rights and causes of action.  Id. at 218.  Thus, it was in this context *only* that the court held than an "express and knowing" assignment was required to assign the right to pursue fiduciary benefits.

In this case, Plaintiffs are not relying upon an implicit assignment, rather they received *actual* assignments of benefits to which the patient is entitled under his or her insurance policy, including (but not limited to) the right to receive directly from Defendants payments to which the patient is entitled.  FAC ¶ 20.  Thus, plaintiffs have sufficiently pled under Twombly, that they have received assignments that are inclusive of breaches of fiduciary duties.  See e.g., North Cypress Medical Center Operating Co. v. Cigna Healthcare, et. al., No. 4:09-cv-2556, 2011 U.S. Dist. LEXIS 20444, *16-17 (S.D. Tex. Mar. 2, 2011) (holding that Plaintiff's complaint that alleged it obtained an express assignment of benefits and rights from plan participants is sufficient to withstand a Motion to Dismiss and allow a breach of fiduciary duty claim to go forward.)

By contrast, the 11th Circuit takes the position that neither § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights and

benefits. <u>Cagle</u>, 112 F. at 1515 (emphasis added); accord, <u>HCA Health Servs. Of Ga.,</u> <u>Inc. v. Employers Health Ins. Co.</u>, 240 F.3d 982, 991 (11th Cir. 2001); <u>Hobbs</u>, 276 F.3d at 1241. Based upon the 11th Circuit rulings and the fact that Plaintiffs' pleadings regarding assignments are distinguishable from the cases cited by UnitedHealth, it is clear that the Plaintiffs have standing to pursue breach of fiduciary duty claims and Defendant's arguments must fail.

### B. The Supreme Court Case CIGNA <u>Corp. v. Amara</u> Permits Plaintiffs To Assert Causes Of Action Under Both § 502(a)(1)(B) And Under § 502(a)(3).

UnitedHealth next contends that Plaintiffs' cause of action for breach of fiduciary duty under § 502(a)(3) of ERISA (Count II) must be dismissed, arguing that it is duplicative of Plaintiffs' cause of action for benefits under § 502(a)(1)(b) of ERISA (Count I). <u>See</u>, UnitedHealth Memo. at 15-17. UnitedHealth argues that Plaintiffs' cause of action for breach of fiduciary duty must be dismissed under the reasoning of <u>Jones v.</u> <u>Am. Gen. Life & Accident Ins. Co.</u>, 370 F.3d 1065, 1073 (11th Cir. 2004), that a § 502(a)(3) claim is not appropriate where, "the allegations supporting the § 502 (a)(3) claim [are] also sufficient to state a cause of action under § (a)(1)(B), regardless of the relief sought." <u>Id.</u> at 16.

Defendant's argument fails in light of the recent case <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866 (2011). In <u>CIGNA</u>, plan participants sought to be made whole for harm caused to them when they received misleading and false information with regard to the conversion of their defined benefit plan to a cash balance plan. <u>Id.</u> at 1872-73. Although the district court ordered the plan reformed and benefits paid under § 502(a)(1)(B), the Supreme Court held that the district court did so in error as § 502(a)(1)(B), does not provide those types of remedies. Instead, the Court held that § 502 (a)(3) provided a

broad range of equitable remedies for such fiduciary misconduct, including make-whole relief, monetary damages, and plan reformation.  Id. at 1880.

UnitedHealth's contention that Plaintiffs' claims for breach of fiduciary duty are really claims for benefits under § 502(a)(1)(B) and cannot also be pursued under § 502(a)(3) does not survive CIGNA.  In CIGNA, the Supreme Court considered the availability of equitable relief under § 502(a)(3) precisely because it determined that the claim for make-whole relief was not actually a claim for benefits that could be brought under § 502(a)(1)(B).  Plaintiffs were allowed to assert and to pursue both claims under § 502 simultaneously in CIGNA. The Supreme Court did not rule that Plaintiffs had to elect one statutory section over another for which to pursue.  If that had been the case, then the Plaintiffs in CIGNA would not have been made whole.  The same scenario is present here, and as such, Plaintiffs should be allowed to assert their breach of fiduciary claims, in conjunction with their § 502(a)(1)(B) claims.

**C. Even Without Relying Upon The CIGNA Case, Plaintiffs' Claims For Breach Of Fiduciary Duty Are Based Upon Different Allegations Than Those Claims Alleged Pursuant To § 502(a)(1)(B) And Should Be Allowed To Go Forward.**

The 11th Circuit has held in Jones v. American Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1073-4 (11th Cir. 2004) that the plaintiffs in that action were allowed to plead a breach of fiduciary claim as an alternative to a claim for benefits when the breach of fiduciary claim was premised upon different allegations of misconduct than their claim for benefits.  Specifically, the plaintiffs' claims for benefits in Jones, under subsection (a)(1)(B), were based upon their contentions that the plan at issue was ambiguous as to whether the group life benefit had vested.  Id. at 1070.  However, their claims for breach of fiduciary duty were not based upon the withholding of vested benefits, but claims that

the defendant "engaged in a systematic pattern of misrepresentation" that caused the plaintiffs to believe their life insurance benefits would not be changed.  Id. at 1071.

Similarly, in the instant matter, the Plaintiffs' claims for breach of fiduciary duty lie not in the withholding of benefits, but in the way that UnitedHealth, by continuously granting pre-authorizations and/or pre-certifications to Plaintiffs, materially misrepresented to Plaintiffs that the procedures in question met all of UnitedHealth's criteria for coverage and that UnitedHealth would make payment to Plaintiffs.  FAC ¶¶ 18-23.  These types of claims are different from the withholding or reducing of benefits as alleged in Count I of the First Amended Complaint.  Accordingly, Plaintiffs' claim for breach of fiduciary duty should not be dismissed as this claim sounds in fraud rather than just as a claim for unpaid benefits as asserted in Count I of the Plaintiffs' First Amended Complaint.

## V.  PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUSTAIN A CLAIM UNDER § 1133 – "FULL & FAIR REVIEW"

UnitedHealth argues that Count III of Plaintiffs' complaint wherein Plaintiffs allege they were not provided a "full and fair review" of their claims for reimbursement should be dismissed because Plaintiffs have not alleged any plan terms with which the denials were inconsistent and/or unauthorized, and because Plaintiffs are not entitled to any relief under this cause of action.  Both of these arguments advanced by UnitedHealth are without merit.

First, Plaintiffs have provided sufficient factual support to sustain this cause of action in accordance with the Court's Order.  Defendant again complains that Plaintiffs have not identified any plans plan terms with which the denials were inconsistent. UnitedHealth Memo. at 17.  This argument is without merit as Plaintiffs specifically amended their complaint to assert that the denials were inconsistent with the plan terms

since preapprovals were granted, the claims were considered to be "covered services" or "covered benefits," See, FAC ¶ 46, and then the claims were denied.  Accordingly, the Plaintiffs have satisfied the Notice Pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure in this regard and placed UnitedHealth on proper notice of the claims advanced against it.

UnitedHealth then goes on to erroneously state that even if Plaintiffs have sufficiently pled a violation of § 1133, Plaintiffs are not entitled to relief from the court since the appropriate remedy for these types of violations is that the administrative appeals are deemed exhausted.  Id.  While that assertion is partially true, the potential remedy is still one the Plaintiffs seek to retain.  Plaintiffs did not receive a "full and fair review" as required by ERISA, as demonstrated by the blanket denials of all preapproved MUA claims from UnitedHealth, especially in light of UnitedHealth's prior pattern of payment of such claims.  In the event this Court ultimately finds that Plaintiffs did not exhaust their administrative remedies, but also rules that Defendant violated the full and fair review provisions of ERISA, then the Plaintiffs' appeals will be deemed exhausted and the case will go forward in Court.   Other courts have ruled that courts can retain jurisdiction for a violation of § 1133.  See, Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993) (remand not necessary where the claimant's underlying claim is clear); Martinez-Claib v. Business Men's Assurance Co. of America, et. al., 2008 U.S. Dist. LEXIS 31089 at 19 (M.D. Fla, Mar. 31, 2008).[2]

---

[2] UnitedHealth's reliance upon Lieberman v. United Healthcare Ins. Co., No. 09-81050-CIV, 2010 WL 903260, at *4 (S.D. Fla. Mar. 10, 2010), aff'd on other grounds, 2011 WL 344100 (11th Cir. Feb. 4, 2011) is also misplaced and distinguishable.  In Lieberman, the complaint only set forth three sentences, in a conclusion fashion to plead their claim.  By contrast, Plaintiffs' First Amended Complaint sets forth more detailed allegations for this Count.

In short, this court does have the power to adjudicate this issue and to retain jurisdiction, so UnitedHealth's assertion that Plaintiffs cannot obtain any relief from this court is wrong.

## VI.  PLAINTIFFS MAY PURSUE THEIR CLAIMS FOR EQUITABLE ESTOPPEL

UnitedHealth next contends that Plaintiffs have not pled the elements of equitable estoppel because Plaintiffs have not identified the ambiguous plan provisions.  See, UnitedHealth Memo. at 18.  Plaintiffs' cause of action for equitable estoppel is pled sufficiently since it focuses exclusively on the inequitable conduct of UnitedHealth. Plaintiffs have alleged that UnitedHealth, by continuously granting pre-authorizations and/or pre-certifications to Plaintiffs in the course of UnitedHealth's voluntary dialogues with Plaintiffs, materially misrepresented to Plaintiffs that the MUAs in question meet all of UnitedHealth's criteria for coverage, as well its definition of a "covered service"  (i.e. the ambiguous plan provisions), and that UnitedHealth would make payment to Plaintiffs. See FAC ¶¶ 19-23.  Plaintiffs relied on the representations that MUAs were covered services by going forward with the surgeries on the patients covered by UnitedHealth, based on standard industry practice of accepting such communications from an insurance company as an assurance that the insurance company will make payment.  See Id. ¶ 50-57.  Plaintiffs thus argue that they are entitled to payment from UnitedHealth because UnitedHealth's own conduct in granting the pre-authorizations (presumably after looking at individual plan provisions regarding covered services) equitably estops UnitedHealth from denying payment, particularly in light of its pattern of prior payment of all MUAs.

In accordance with the Court's Order, Plaintiffs have identified that the plan provision that is ambiguous is the provision that allows benefits to be paid for "covered services" or "covered benefits."  FAC ¶ 52.

Plaintiffs acknowledge that the 11th Circuit has held that the federal common-law claim of equitable estoppel may be applied when an insured relies, to his detriment, on an interpretation of an ambiguous provision in a plan by a representative of the plan.  Kane v. Aetna Life Ins. Co., 893 F.2d 1283, 1286 (11th Cir.), cert. denied, 498 U.S. 890 (1990). Plaintiffs have  alleged an inherent ambiguity exists within every plan.  Plaintiffs assert that UnitedHealth's conduct in denying coverage after granting numerous pre-authorizations and/or pre-certifications for multiple MUA's demonstrates the existence of an inherent ambiguity in all of the applicable plan provisions themselves, particularly the plan terms that define "covered services."  If an ambiguity did not exist, in the definition and interpretation of the term "covered services" or  "covered benefits," then the pre-authorizations and/or pre-certifications would not have issued in the first place, only to be denied at a later date.  As stated in Point III above, the procedure for determining pre-approvals is one that causes a UnitedHealth representative to determine first and foremost, whether an MUA is a covered service, as that term is defined by each plan.  To then deny the claim after issuing a pre-approval shows the inherent ambiguity in the interpretation and application of the coverage portion of each plan.  As such, Plaintiffs have pled the requisite elements for this cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss the Complaint be denied.  In the event that this Court disagrees with any of Plaintiffs' arguments, Plaintiffs respectfully request leave to amend the First Amended Complaint, accordingly, pursuant to Rule 15.

Respectfully submitted,

BY: ____/s/ Martin R. Raskin_____
      MARTIN R. RASKIN
      Florida Bar No. 0315206
      mraskin@raskinlaw.com

BY: ____/s/ Jane Serene Raskin_____
      JANE SERENE RASKIN
      Florida Bar No. 0848689
      jraskin@raskinlaw.com
      RASKIN & RASKIN, P.A.
      866 South Dixie Highway
      Coral Gables, Fl.  33146
      Telephone: (305) 444-3400
      Facsimile: (305) 445-0266
      Counsel for Sanctuary Surgical
      Centre, Inc., Gladiolus Surgery
      Center, LLC, Physicians Surgical
      Group, LLC, Naples Physicians
      Surgical Group, LLC, PSG of S.
      Florida, LLC, and Physicians
      Surgical Group of Boca Raton, LLC

BY: ____/s/ Stephen E. Lampf_____
      STEPHEN E. LAMPF
      lampf@llpplaw.com

BY: ____/s/ Traci A. Zalinski_____
      TRACI A. ZALINSKI
      zalinski@llpplaw.com
      LAMPF, LIPKIND, PRUPIS &
      PETIGROW
      80 Main Street, Suite 350
      West Orange, New Jersey 07052
      Telephone: (973) 325-2100
      Facsimile: (973) 325-2839
      Co-Counsel for Sanctuary Surgical
      Centre, Inc., Gladiolus Surgery Center,
      LLC, Physicians Surgical Group, LLC,
      Naples Physicians Surgical Group, LLC,
      PSG of S. Florida, LLC, and Physicians
      Surgical Group of Boca Raton, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document was served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices of electronic filing.

/s/ Martin R. Raskin