UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81589-CV-HURLEY/HOPKINS

**SANCTUARY SURGICAL CENTRE,
INC., et al.,**

    **Plaintiffs,**

v.

**UNITEDHEALTHCARE, INC., et al.,**

    **Defendants.**
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss the Second Amended Complaint [ECF No. 98]. For the reasons to follow, the Court will grant in part and deny in part Defendants' motion.

### I.

The facts relevant to the instant motion are essentially the same as those outlined in previous orders on motions to dismiss. *See* Order Granting Defendants' Motions to Dismiss Without Prejudice [ECF No. 65]. In brief, Plaintiffs are four surgical centers and two medical service providers seeking to recover payment of benefits allegedly due under employer health benefits plans.[1] Defendants, UnitedHealth Group, Inc., United HealthCare Services, Inc., UnitedHealthcare

---

[1] The patients to whom coverage is allegedly owed assigned their benefits under the plans to Plaintiffs. 2d Am. Compl. ¶¶ 59-65 [ECF No. 94]. The Court discusses these assignments in greater detail in Part III(B)(3)(i).

Insurance Company (collectively "United") collectively function as the insurer providing and administering coverage under the plans.

Plaintiffs performed a procedure known as "manipulation under anesthesia" ("MUA")—for which they received pre-authorizations from United—on over 500 patients. Although United had previously provided coverage for MUAs by sending payment directly to Plaintiffs or the patients, United eventually began to deny coverage on the basis that the MUAs were unproven, experimental, investigational, not medically necessary, or otherwise not a covered service under the particular plan at issue[2] and therefore not entitled to coverage.

In the Second Amended Complaint, Plaintiffs assert four causes of action:

(1) wrongful denial of benefits under § 502(a)(1)(B) of the Employee Retirement income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B);

(2) breach of the fiduciary duties of loyalty and care under ERISA § 502(a)(3);

(3) failure to provide plan documents in violation of ERISA § 502(c); and

(4) equitable estoppel under the common law of ERISA.

In the instant motion to dismiss, United challenges the complaint on multiple grounds. First, United argues that the entire complaint must be dismissed because Plaintiffs have not provided the plans at issue or cited specific plan terms with respect to each of the patients and MUAs at issue. United then challenges the sufficiency of the pleadings with respect to each of the individual claims. Upon review, the Court will deny United's motion to dismiss the entire complaint and will grant the

---

[2]Notably, Plaintiffs claims arise from a variety of different plans, and the MUAs at issue were administered to treat a variety of different conditions.

motion with respect to the wrongful denial of benefits claim only. The Court will deny the motion as to Plaintiffs' claims based on equitable estoppel, breach of fiduciary duty, and failure to provide plan documents subject to the qualifications contained herein.

## II.

This Court possesses federal subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under ERISA, 29 U.S.C. § 1001 *et seq*. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Southern District of Florida.

## III.

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986). Mere conclusory allegations, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

3

*See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).[3]

### A.     *Failure to Identify All of the Plans and Specific Plan Terms*

United argues the entire complaint must be dismissed because Plaintiffs have failed to establish the existence of the ERISA plans under which they sue because they have used eight plans to generalize more than 300 plan groups that are at issue. Plaintiffs respond that they have complied with the pleading requirements because they have provided sufficient information—specifically, the patient and group ID numbers, which is all of the information Plaintiffs use when submitting a claim—to raise the existence of the plans above a speculative level and to enable United to identify the specific plans at issue. United adds that even if it can identify each applicable plan, it cannot tell which provisions of those it is supposed to have breached. Finally, United argues that "Plaintiffs have no basis to represent that the eight plans they cite are representative of the remaining unidentified plans." Reply 3 [ECF No. 103].

Having reviewed Plaintiffs' filings and bearing in mind that the factual allegations of a complaint must be assumed true for the purposes of a motion to dismiss, the Court concludes that Plaintiffs have sufficiently pleaded the existence of the plans and have sufficiently apprised United of the basis of their claims. According to the complaint, United routinely engaged in a dialogue with Plaintiffs concerning a patient's coverage after Plaintiffs provided United with the information on the patient's insurance card, which information has been reproduced in exhibits to the complaint.

---

[3]Because the Court is able to resolve Plaintiffs' claim asserting that United made a wrongful determination of medical necessity on procedural grounds, the Court declines to set forth the various standards of review that might apply to these determinations at this time.

2d Am. Compl. ¶ 32 [ECF No. 94]. Given this fact, it is reasonable to expect that United should be able to identify the plans for the purpose of this litigation with the information that Plaintiffs have provided. In addition, Plaintiffs' allegation that the excerpted plans are representative of all the plans at issue must be accepted at this stage of the proceeding. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009) (finding that "although [the plaintiffs] did not link any particular assignment to a particular ERISA plan," they could still prevail by "demonstrat[ing] that the submitted assignments in the claim forms are representative of assignments [the plaintiffs] received."). The federal pleading standards do not "impose a probability requirement at the pleading stage" but rather "simply call[] for enough fact to raise a reasonable expectation that discovery will reveal evidence of" Plaintiffs' allegations. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). The Court finds that Plaintiffs have done so here.

Another district court in this circuit considered similar issues, recognizing that "to be able to defend against Plaintiffs' claims, Defendant will need to know which patients were on which plans and whether they were covered by ERISA." *Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 598 F. Supp. 2d 1344, 1361-62 (N.D. Ga. 2009). The court nevertheless did not require the plaintiffs to plead policy numbers or written assignments in the complaint because even without these details the plaintiffs had raised the right to relief beyond a speculative level. Similarly, in the instant case Plaintiffs have not provided every detail of the plans and plan terms but have alleged enough facts about the plans to raise the right to relief beyond mere speculation.

United argues that *National Renal Alliance* is inapposite because that case involved a group of plans, some ERISA and some non-ERISA, and either ERISA and non-ERISA based claims would

5

apply to each plan depending on its status. Regardless of whether a given plan was an ERISA or non-ERISA plan, the plaintiffs had stated a claim that would apply to it. *Id.* In the instant case, by contrast, Plaintiffs have only attempted to state ERISA claims. Thus, Plaintiffs would state no cause of action as to any non-ERISA plans.

This distinction is without significant to the instant case. Plaintiffs have alleged that each plan is governed by ERISA. As a matter of law, some of the plans may, in fact, not be governed by ERISA. Claims pursuant to those plans must be dismissed. However, the Court will not dismiss the claims under every plan merely because some of them may warrant dismissal. Rather, it is United's responsibility, having been provided sufficient information to identify the plans under which Plaintiffs sue, to move to dismiss any of those plans that are not covered by ERISA, articulating the legal and factual basis for this conclusion. United has suggested that the Miami-Dade Public Schools plan (the "MDPS Plan") is not an ERISA plan. If this is so, United, having been put on notice that Plaintiffs are asserting the MDPS Plan as one covered by ERISA, must demonstrate that as a matter of law it is not. If they do so, the Court will dismiss those claims. The Court will not, however, dismiss the entirety of the complaint simply upon a suggestion that some of the plans may not be ERISA plans. Accordingly, the Court will deny this portion of the motion to dismiss.

### B.     *United's Objections to Claims One, Two, and Four*[4]

Because they are interrelated, the Court will discuss Plaintiffs' claims under ERISA §

---

[4]Recall that claim one asserts a cause of action for wrongful denial of benefits, that claim two asserts a cause of action for breach of fiduciary duties, and that claim four asserts a cause of action based on equitable estoppel. For reasons that will become apparent, the Court will discuss claim one first, then claim two, and then claim four.

6

502(a)(1)(B) and (a)(3), along with the corresponding grounds for dismissal asserted by United together in this section. Broadly, Plaintiffs' Second Amended Complaint asserts two basic theories. The first is that United wrongfully denied coverage as to each and every MUA at issue—i.e., United wrongfully concluded that each of the MUAs were not medically necessary. On that basis, Plaintiffs bring a claim under § 502(a)(1)(B), which entitles an ERISA beneficiary to bring an action to "recover benefits due to him under the terms of his plan." Plaintiffs' argument is that if United had properly interpreted and applied the plans at issue, it would have paid benefits to Plaintiffs. This argument puts United's coverage determinations for all 500 patients at issue.

      Plaintiffs also assert a different theory of their entitlement to relief that is premised not on United's wrongful application of the plans to individual patients but on its general practice of issuing pre-approvals. Plaintiffs have provided plan excerpts to demonstrate the significance of the pre-approval process. For example, the Hill Manufacturing Co., Inc. Plan (the "Hill Plan") "urge[s]" beneficiaries to "confirm with us that the services you plan to receive are Covered Health Services." 2d Am. Compl. ¶ 37(a) [ECF No. 94]. "By calling before you receive treatment," the Hill Plan states, "you can check to see if the service is subject to limitations or exclusions." *Id.* Likewise, in describing its pre-certification process, the IBM plan states that "[t]he health plan's Care Coordinator is required to perform a medical care review and obtain medical information from [the beneficiaries'] treating physician in order to determine if the services are medically necessary and eligible for coverage." *Id.* at ¶ 36(b). Other plans contain similar provisions.[5] These excerpts demonstrate that

---

      [5]For example, the American Airlines Plans states that if beneficiaries "call UnitedHealthcare to obtain a predetermination of benefits by phone . . . UnitedHealthcare will coordinate with Health

the pre-approvals granted in the case of each MUA represented United's own interpretation of the medical necessity of the MUAs. Moreover, it is clear that the pre-approvals were expressly intended to be relied upon by beneficiaries or, in this case, the providers to whom benefits were assigned. The pre-approvals form the basis of Plaintiffs' claims for breach of fiduciary duty under § 502(a)(3) and equitable estoppel under ERISA common law.

With this backdrop, the Court will now discuss Plaintiffs' individual claims.

### *1. Claim One: Wrongful Denial of Benefits Under § 502(a)(1)(B)*

Plaintiffs' claim for wrongful denial of benefits under § 502(a)(1)(B) must be dismissed because Plaintiffs have improperly grouped disparate claims founded on separate transactions or occurrences together in violation of Fed. R. Civ. P. 10(b). Plaintiffs have not chosen to assert their claims as to 500 different patients as a class action—and a cursory review of the complaints suggests that, at least as to claim one, Plaintiffs could not do so—but have instead grouped them all together in a single claim. Rule 10(b) states that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Here, Plaintiffs have grouped together over 500 different patients with different conditions on whom

---

International to determine the medical necessity of your proposed surgery before making a predetermination of benefits." *Id.* at ¶ 36(c).

The Delta Airlines plans states that "Notification allows you to . . . confirm benefits that are available" and that "the Health Advocate Team determines if the service or supply is a Covered Service." Similarly, "QuickReview will tell [a beneficiary] [w]hether the proposed treatment is medically necessary and appropriate for your condition. . . . If you do not call, you may be subject to a retrospective review of the surgery to determine whether it was medically necessary." *Id.* at ¶ 36(d).

As discussed previously, Plaintiffs have alleged that these excerpts are representative of the other plans at issue. *See supra* Part III(A).

Plaintiffs performed MUAs individually and presumably as part of distinct transactions. *See* 2d Am. Compl. Ex. A. [ECF No. 94-1]. To prove their entitlement to benefits, Plaintiffs would have to establish the medical necessity of each MUA with respect to each patient, which would require analysis of a vast array of distinct issues potentially under different legal standards. As a practical matter, it is impossible to evaluate the medical necessity of over 500 cases and 900 MUAs when grouped together in a single count, much less to grant relief on a single count encompassing 900 independent mixed questions of fact and law.

Plaintiffs' allegation that United did not review each MUA individually but simply denied coverage for every MUA across the board does not eliminate this concern. First, across-the-board denials are not inconsistent with the notion that a MUA is actually a medically unnecessary procedure. Second, across-the-board denials would not entitle Plaintiffs to recovery without a further showing that the denials were wrongful. Showing that United reached its decision arbitrarily might help defeat the deference that decision is entitled to under the plans, but if United arbitrarily reached a conclusion that turned out to be correct, Plaintiffs would not have established that Plaintiffs have "benefits due to [them]." To make this showing, Plaintiffs would have to go on to show that the MUAs were, in fact, medically necessary with respect to every patient on which they were performed. Thus, individualized evidence on a vast array of disparate topics would be necessary, and grouping these claims together is therefore still improper under Rule 10.

United also argues that this claim should be dismissed because Plaintiffs have not alleged facts from which one could reasonably conclude that the procedures were medically necessary. They argue that Plaintiffs' reliance upon the listing of MUAs in the American Medical Association's

9

Codebook of Reimbursable Procedures, 2d Am. Compl. ¶ 28 [ECF No. 94], is insufficient to demonstrate medical necessity because the requirements for listing in the Codebook are not identical to the requirements for medical necessity under the plans and because listing in the Codebook does not demonstrate medical necessity with respect to each patient's condition. *See Advanced Rehab., LLC v. UnitedHealthGroup, Inc.*, No. 10-cv-00263 (DMC)(JAD), 2011 WL 995960, at *3-4 (D.N.J. Mar. 17, 2011). United is correct that mere listing in the Codebook does not support a conclusion that the procedures were medically necessary. However, Plaintiffs do not rely solely on the Codebook listing but also allege that United issued pre-approvals of every MUA at issue. Based on the language of the plans, United would not have issued pre-approvals if it did not find the MUAs medically necessary, which provides sufficient factual support for the conclusion that the MUAs were, in fact, medically necessary so as to defeat a motion to dismiss. Thus, while the Court will deny United's motion to dismiss on the basis that Plaintiffs have failed to state a claim, the Court will nevertheless dismiss Plaintiffs' first cause of action for failure to comply with Rule 10.

### 2. *Claim Four: Equitable Estoppel Under § 502(a)(1)(B)*

*(i)    Ambiguity*

In addition to a claim based on a wrongful coverage determination, the Eleventh Circuit "has recognized a very narrow common law doctrine under Section 502(a)(1)(B) for equitable estoppel, which is available where the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). United argues that Plaintiffs have failed to identify a specific ambiguity in the plans. A provision is ambiguous if "it can reasonably be construed in two

different ways." *Wright v. Aetna Life Ins. Co.*, 110 F.3d 762, 763 (11th Cir. 1997); *Lee v. Blue Cross*, 10 F.3d 1547, 1549-51 (11th Cir. 1994). Plaintiffs argue that the plans are ambiguous as to whether a procedure is "medically necessary" and therefore a service for which they can receive benefits.

Relying on the portions of the plans the parties have provided, the Court finds that Plaintiffs have plausibly established the existence of an ambiguity.[6] The concept of *medical necessity* denotes professional judgment and a fact-specific evaluation of the circumstances of an individual case. The plans themselves seem to admit a degree of ambiguity as to medical necessity by encouraging beneficiaries to receive pre-approvals addressing the medical necessity of proposed treatments. *See supra* note 3. This suggests that reasonable minds could differ as to whether a service is medically necessary, and plan beneficiaries who do not, as a rule, have any medical expertise, cannot be expected to know by reading their plans whether a given service is medically necessary. Moreover, United's own history of granting pre-approvals and then denying coverage supports a finding of ambiguity. *See Waschak v. Acuity Brands, Inc. Senior Mgmt. Benefit Plan*, No. 1:07-CV-3121-TWT, 2009 WL 103622, *5 (N.D. Ga. Jan. 14, 2009); *see also Dahl-Eimers v. Mut. of Omaha Life*

---

[6] As before, the Court observes that it may have to revisit this conclusion as the plans are examined by the parties. An ambiguity in a policy turns sharply based on the particular language used. As the parties scrutinize the variety of plans at issue, they may uncover language that clarifies the meaning of *medical necessity* beyond any ambiguity, but at this stage the parties have not directed the Court to such language. In addition, the definitions of *medical necessity* may vary between plans or plan groups, which may require further subdivision of claims.

The Court observes that because both the plans and the assignments are essential elements of Plaintiffs' claims, United would have been free to examine the plans and assignments and submit these documents or portions thereof to the Court in support of its motion without converting it to a motion for summary judgment. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). United elected not to do so.

11

*Ins. Co.*, 986 F.2d 1379, 1381-82 (11th Cir. 1993) ("[D]iffering interpretations of the same provision is evidence of ambiguity . . . ."). While this conclusion is subject to reconsideration once the parties finally get to the business of examining the actual plans at issue, at this point Plaintiffs have sufficiently established an ambiguity so as to allow the claim to proceed.

    *(ii)    Reasonable Reliance*

United also argues that Plaintiffs' equitable estoppel claim must fail because it is "preposterous" to suggest that Plaintiffs could have reasonably relied on the pre-approvals during the entire three-year period over which the MUAs were performed. The Court is unwilling to evaluate the reasonableness Plaintiffs' reliance and how it may have changed as United began to deny coverage except to note that the language of the plans themselves provides sufficient support for a finding of reasonable reliance at this stage. It may be that after a certain number of denials, Plaintiffs ought to have known better than to rely on pre-approvals that United had consistently dishonored, but this requires a factual determination and careful weighing of evidence that is inappropriate on a motion to dismiss.[7]

In light of the foregoing, the Court will deny United's motion to dismiss as to Plaintiffs' equitable estoppel claim.

### 3.   Claim Two: Breach of Fiduciary Duties Under § 502(a)(3)

Under ERISA § 502(a)(3), "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief" to redress ERISA violations. Plaintiffs

---

[7]In addition, the fact that Plaintiffs continued to accept and rely on pre-approvals even after United began to deny pre-approved claims is counterbalanced by the fact that United continue to issue pre-approvals after it began ultimately denying coverage.

allege that United violated ERISA § 404(a)[8] when it granted pre-approvals of services for which it would later deny coverage. "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). In its motion to dismiss, United argues that Plaintiffs cannot assert an action for breach of fiduciary duty (1) because Plaintiffs lack standing and (2) because breach of fiduciary duty claims are not cognizable if ERISA provides another remedy.

    *(i)*    *Standing*

Plaintiffs assert two bases for standing to assert a claim for breach of fiduciary duties. First, Plaintiffs argue that, by virtue of the assignments they received from their patients, they are *beneficiaries* under ERISA. ERISA § 502(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary."). Plaintiffs argue that "[w]hen patients assigned their benefits to Plaintiffs, [they] designated Plaintiffs to be entitled to certain benefits under the plan [and that] Plaintiff are thus ERISA beneficiaries." 2d Am. Compl. ¶ 66 [ECF No. 94]. Although the definition of

---

[8]ERISA § 404(a) provides as follows:

(a) Prudent man standard of care

**(1)**    Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

[. . .]

**(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

13

*beneficiary*[9] can reasonably be read to include a healthcare provider that has received an assignment of benefits, *see* David P. Kallus, *ERISA: Do Health Care Providers Have Standing to Bring a Civil Enforcement Action Under Section 1132(a)?*, 30 Santa Clara L. Rev. 173, 184-95 (1990), Eleventh Circuit precedent dictates that the Court to reject this interpretation. "Healthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA." *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001). Thus, the Eleventh Circuit has held that "[h]ealthcare providers may have standing under ERISA *only* when they derivatively assert the rights of their patients as beneficiaries of an ERISA plan." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010) (emphasis added). In addition, by repeatedly finding that healthcare providers have *derivative* standing by virtue of assignments of benefits, the Court has implicitly rejected any contention that healthcare providers have direct, express standing as ERISA beneficiaries by virtue of assignments of benefits. *See, e.g.*, *Anthem*, 591 F.3d at 1347.

Second, and in accordance with Eleventh Circuit precedent, Plaintiffs argue that they have derivative standing to sue by virtue of written assignments from their patients who are beneficiaries under the plans. *Id.* ("[I]t is well-established in this and most other circuits that a healthcare provider may acquire derivative standing to sue under ERISA by obtaining a written assignment from a 'participant' or 'beneficiary' of his right to payment of medical benefits."). United responds by arguing that the assignments, by their terms, only conferred upon Plaintiffs the right to receive benefits and not a right to sue for breach of a fiduciary duty. United's argument finds support in *Tex.*

---

[9]ERISA defines a *beneficiary* as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). ERISA also defines a *person* as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." *Id.* § 1002(9).

*Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210 (5th Cir. 1997), in which the court held that breach of fiduciary duty claims "are not assigned by implication or by operation of law [but] only [by] an express and knowing assignment." *Id.* at 219. United argues that the assignments in the instant case[10] fall short of this standard.

Assignments are ordinarily "interpreted or construed in accordance with the rules of construction governing contracts generally." 6A C.J.S. *Assignemnts* § 86. "The primary objective in construing an assignment is to ascertain and carry out the intention of the parties[, and] . . . [i]n order to better understand the intention of the parties the court may also consider surrounding circumstances, such as the object to be accomplished through the assignment, and the relations and conduct of the parties." *Id.*  See also, *Buckeye Cellulose Corp. v. Sutton Const. Co., Inc.*, 907 F.2d 1090, 1093 (11th Cir. 1990). The Fifth Circuit's decision in *Gaylord* articulates a more precise standard applicable to assignments of claims for breach of fiduciary duty under ERISA that requires such an assignment to be knowing and express. 105 F.3d at 219. Although Eleventh Circuit decisions do not appear to make this distinction, *see, e.g.*, *Anthem*, 591 F.3d at 1347; *Hobbs*, 276 F.3d at 1242, Plaintiffs have provided no cases that squarely address this issue.

Rather than resolve this difficult issue of law at this stage, the Court will deny this portion of United's motion to dismiss for two reasons. First, the issues addressed in the following section

---

[10]The assignments in the instant case provide as follows:

> I understand that I am responsible for all charges.  As a courtesy, my insurance will be billed for me.  It is my responsibility to pay any deductible, copay or any other balance not paid for by my insurance company.  *I authorize insurance benefits to be paid directly to the provider.*

2d Am. Compl. ¶ 61 [ECF No. 94] (emphasis added).

present a more direct route to dismissal of the breach of fiduciary duty claim, which may render a conclusion on the scope and validity of the assignments unnecessary.[11] Second, because the breach of fiduciary duty claim overlaps with the equitable estoppel claim, the Court sees no prejudice to United in allowing both claims to continue in parallel until such time as the Court can definitively determine whether the estoppel claim is unavailable so as to allow the breach of fiduciary duty claim to proceed. The Court discuss the interplay between the two claims in the following section.

*(ii)    Whether a Breach of Fiduciary Duty Claim Is Cognizable*

United's second objection focuses on § 502(a)(3)'s authorization of "*appropriate* equitable relief." (emphasis added). In interpreting this provision, the Supreme Court has noted that it "expect[s] that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). United argues that Plaintiffs' breach of fiduciary duty claim is merely a repackaged claim for wrongful denial of benefits pursuant to § 502(a)(1)(B) and must therefore be dismissed.

In *Varity*, the Court held that ERISA § 502(a)(3) authorized individualized equitable relief, and when it made the observation about what equitable relief would be "appropriate," it was in response to the following concern:

> Consider a plan administrator's decision not to pay for surgery on the ground that it falls outside the plan's coverage. At present, courts review such decisions with a degree of deference to the administrator, provided that "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." But what will happen, ask *amici*, if a beneficiary can repackage his or her "denial of benefits" claim as a claim for "breach

---

[11]The Court notes, however, that its conclusions in Part III(B)(3)(ii) are subject to revision pending fuller explication of the language of the plans with respect to *medical necessity*.

> of fiduciary duty?" Wouldn't a court, they ask, then have to forgo deference and hold the administrator to the "rigid level of conduct" expected of fiduciaries? And, as a consequence, would there not then be two "incompatible legal standards for courts hearing benefit claim disputes" depending upon whether the beneficiary claimed simply "denial of benefits," or a virtually identical "breach of fiduciary duty?"

*Varity*, 516 U.S. at 514 (internal citation omitted). In the instant case, assuming that United denied Plaintiffs' claims as not medically necessary and that the plans afford United broad discretion in making this determination, Plaintiffs might circumvent the deference with which the Court would evaluate United's decision simply by bringing their claim as one for breach of fiduciary duty. Instead of arguing that United wrongfully denied them benefits due under the plans in violation of ERISA § 502(a)(1)(B), Plaintiffs would argue that breached its fiduciary duty of care by making an incorrect coverage determination.

In such a scenario, the Court would plainly be required to dismiss Plaintiffs' fiduciary duty claim under § 502(a)(3) as inappropriate because ERISA already provides a remedy for incorrect coverage determinations under § 502(a)(1)(B). However, such is not the case here. Plaintiffs' fiduciary duty claim is not premised on the notion that United incorrectly determined that the MUAs are not covered services. Rather, regardless of whether United's ultimate decision to deny coverage was correct, Plaintiffs' theory is that United breached its duty of care by representing through its pre-approvals that the MUAs were covered services when they would eventually be denied.

While this claim is not merely a repackaged claim for benefits, however, it is duplicative of Plaintiffs' equitable estoppel claim described in Part III(B)(1)(ii). Because the Eleventh Circuit has recognized a "narrow common law doctrine under Section 502(a)(1)(B) for equitable estoppel," *Jones*, 370 F.3d at 1069, Plaintiffs "also ha[ve] a cause of action [under Section 502(a)(1)(B)], based on the same allegations" Plaintiffs assert in their claim for breach of fiduciary duties—i.e., that

17

United carelessly represented that it would cover the MUAs via pre-approvals. *Id.* at 1073. This suggests that the breach of fiduciary duty claim may have to be dismissed in the future. However, in light of the fact that the Court has not yet been able to make a final determination of whether the plans at issue feature the requisite ambiguity to state an equitable estoppel claim, the Court views it as premature to dismiss the breach of fiduciary duty claim at this time. Thus, the Court will deny the motion to dismiss with respect to the breach of fiduciary duty claim without prejudice for this basis for dismissal to be reasserted pending a final determination on the ambiguity issue in claim four.[12]

### E.     *Failure to Provide Plan Documents*

Finally, United seeks to dismiss Plaintiffs' claim three for failure to provide plan documents because (1) United is not the plan administrator and because (2) Plaintiffs have not been assigned the right to obtain plan documents from plan administrators. Section 104(b)(4) requires that "*the administrator* . . . furnish a copy of the latest updated summary plan description" to any participant or beneficiary upon written request. 29 U.S.C. § 1024(b)(4) (emphasis added). However, the plans identify parties other than United as the plan administrators. *See, e.g.*, Def.'s Mot. to Dismiss, Ex. 2 at 220-21 [ECF No. 76-3] ("The Administrative Committee of Delta Air Lines, Inc. ('Delta') is the plan administrator of the plans.").

---

[12]The Court further notes that the Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to 'those categories of relief' that, traditionally speaking (*i.e.*, prior to the merger of law and equity) 'were *typically* available in equity.'" *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006) (internal quotations omitted)). Thus, to the extent the breach of fiduciary duty claim ultimately proceeds, the Court would only allow relief of the type that is typically available in equity. Going forward, the parties must be prepared to specify the precise relief sought for this claim and whether that relief is appropriate under *Amara*.

In response, Plaintiffs argue that United is a de facto plan administrator under *Rosen v. RRW, Inc.*, 979 F.2d 191, 192 (11th Cir. 1992), because United is in fact administering the plan despite the provisions designating other entities as administrators. However, "where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer, [the Eleventh Circuit has] rejected the *de facto* plan administrator doctrine." *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007), *vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2006), *reaffirmed in part*, 546 F.3d 1353 (11th Cir. 2008). The *Oliver* court reached this conclusion "particularly in light of the fact that the *employer* made the final determination as to eligibility." *Id.* Thus, under *Oliver*, it is unclear whether third-party administrative service providers are excluded *per se* from the *de facto* plan administrator doctrine or if they are only excluded when they do not actually make final coverage determinations.

Rather than resolve this issue with limited guidance, the Court finds that United is not liable as a *de facto* plan administrator so long as the employers made the final coverage determinations. This is a factual question that the Court cannot resolve on the instant motion. United also argues that the claim for failure to provide plan documents must be dismissed because Plaintiffs have not been assigned the beneficiaries' rights to make such a demand. For the same reasons discussed Part III(B)(3)(i), the Court will not dismiss claim three on the basis of standing at this time. United's motion is therefore denied as to claim three.

## CONCLUSION

For the reasons given, it is hereby **ORDERED** and **ADJUDGED** that:

1. United's Motion to Dismiss the Second Amended Complaint [ECF No. 98] is **GRANTED IN PART** and **DENIED IN PART**.

Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint
Sanctuary Surgical Centre, Inc. v. UnitedHealthcare, Inc.
Case No. 10-cv-81589-DTKH

2. The motion is **GRANTED** with respect to claim one for wrongful denial of benefits under ERISA § 502(a)(1)(B). Claim one is **DISMISSED**.

3. The motion is **DENIED** with respect to claims two, three, and four, which are permitted to continue.

4. United shall file an answer to the Second Amended Complaint no later than **FIFTEEN (15) DAYS** after the date this Order is entered.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 22nd day of October, 2012.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*