UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81589-CIV-HURLEY

SANCTUARY SURGICAL CENTRE, INC. et al.,
      plaintiffs,

vs.

UNITEDHEALTH GROUP, INC.,
      defendants.

_____/

**ORDER *SUA SPONTE* VACATING OCTOBER 22, 2012 ORDER GRANTING
PARTIAL DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT
&
ORDER DISMISSING COUNTS 1 and 4 OF PLAINTIFF'S SECOND AMENDED
COMPLAINT WITHOUT PREJUDICE & DISMISSING COUNTS 2 and 3 OF
PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE
&
ORDER TO SHOW CAUSE**

     **THIS CAUSE** is before the court *sua sponte* for review of the court file and

reconsideration of the operative pleadings in this action following the defendants' recent filing of

answers and multiple counterclaims corresponding to each of the 996 purported derivative

ERISA benefit claims at issue in this action, viewed in conjunction with the parties' joint request

to set the trial of this matter in June 2014 due to the voluminous claims, counterclaims and

anticipated extended discovery proceedings upon the claims now pending.

     Upon *sua sponte* reconsideration of the issues framed by the operative second amended

complaint [ECF No. 94] and the defendants' previously filed motion to dismiss plaintiffs' second

amended complaint [ECF No. 98], the court has determined to *sua sponte* vacate its October 22,

1

2012 order which dismissed Count 1 of plaintiff's second amended complaint and sustained Counts 2 through 4 [ECF No. 112].  The following opinion memorandum is now substituted in its stead.

## I.      Background

The background facts and procedural history of the case have been set out in prior opinions and will not be reiterated here except to the extent necessary to explain the court's current opinion.

Plaintiffs Sanctuary Surgical Center, Inc. and Gladiolus Surgical Center LLC ("the "facilities") are both licensed ambulatory surgical centers engaged in the business of providing ambulatory surgical services to patients. Plaintiffs Physicians Surgical Group LLC, Naples Physicians Surgical Group LLC, PSG of South Florida, LLC and Physicians Surgical Group of Boca Raton, LLC are Florida companies which provide medical and management services. By this action, plaintiffs seek payment for medical services, and specifically for manipulation under anesthesia procedures, or "MUAs," provided at the facilities to patients insured under various employer-sponsored group health insurance policies issued by defendants UnitedHealth Group Inc., United Health Care Services, Inc. and United Healthcare Insurance Company (cumulatively "United").  It is undisputed that there are at least 300 different health insurance plans governing 996 derivative ERISA benefit claims asserted on behalf of approximately 500 different patients at issue in this action.

All plaintiffs are non-participating providers in United's health insurance network. Prior to providing medical services to the patients,[1] plaintiffs' representative telephoned the defendants and spoke with an agent to confirm out-of-network coverage for the requested services.  During each call, the plaintiffs' representative was allegedly informed by a United agent that there was coverage for plaintiffs' facility fees and for the procedures involved.  Plaintiffs allege that they had no access to any of the health insurance plans at issue when they placed the pre-authorization calls for verification of benefits, and therefore "had to rely" on United's verbal verification of coverage and promise of payment before rendering treatment. [Second Amended Complaint ¶¶ 39-40].

Plaintiffs allegedly received an assignment of benefits from all involved patients, each one of whom had out-of-network benefits for ambulatory surgery under their respective group insurance agreements or plans with United.  Plaintiffs allege that the "standard" assignment of benefit form signed by each patient provided as follows:

> I understand that I am responsible for all charges.  As a courtesy, my insurance will be billed for me.  It is my responsibility to pay any deductible copay or any other balance not paid for by my insurance company.   I authorize insurance benefits to be paid directly to the provider.

> By signing below, I acknowledge that I authorize payment to [plaintiff]… I have been presented with a copy of the Notice of Privacy Policy… I understand the contents of the notice. I request medical insurance benefits either to myself, or to the party who accepts assignment. Regulations pertaining to medical assignments of benefits apply.

---

[1] The patients are identified by patient ID number in six separate attachments to the second amended complaint corresponding to each medical provider plaintiff.  Each exhibit assigns a chronological numerical identification to each patient [1-348; 1-369; 1-109; 1-97; 1-97; 1-50 and 1-23 respectively], followed by the individual's patient ID number, group ID number, description of the underlying condition precipitating the procedure, and procedure dates. In this fashion, the complaint identifies a total of 996 individual claims arising from separate medical procedures and occurrences.

[Second Amended Complaint ¶ 61].  Plaintiffs allege that United initially honored the claims for MUAs submitted by plaintiffs by sending payment directly to plaintiffs or to the patients for a number of years, but at some indeterminate point in time began systematically denying the claims "on the basis that they were an unproven service, experimental, investigational, not medically necessary" and/or beyond the scope of covered benefits or services [Second Amended Complaint ¶¶ 41-42].

As assignee of each patient's right to receive payment for covered medical services under the respective plans, plaintiffs bring this action contending that United improperly denied the claims for payment in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a) (1) (B) (Count 1), breached fiduciary duties of loyalty and care owed to plan "beneficiaries," purportedly including both the assignee/medical providers and the patient/assignors, in violation of ERISA, 29 U.S.C. § 1132 (a) (3) (Count 2), and failed to provide  plaintiffs with plan documents in violation of ERISA, 29 U.S.C. § 1024 (b) (4) (Count 3).  In addition, the plaintiffs assert independent claims for equitable estoppel based on the preapproval telephone conversations exchanged between plaintiff's employees and United's representatives (Count 4). [1]

---

[1] Although plaintiffs couch the estoppel claims as ones asserted under the "federal common law of ERISA," asserting these claims as plan "beneficiaries" in their own right, purportedly deriving from their status as assignees of plan proceeds [Second Amended Complaint, ¶¶ 96-97], the allegations of the complaint clearly demonstrate that plaintiffs are basing their estoppel claims on telephone conversations between plaintiffs' employees and defendants' representatives to which no patient was a party.  Thus, the plaintiff providers are not and could not be "standing in the shoes" of the patients or asserting derivative ERISA estoppel claims on behalf of patients seeking to enforce federal common law claims against defendants.  Instead, at best plaintiffs are asserting independent, direct federal common law equitable estoppel claims on their own behalf, and the viability of these claims will be assessed on this basis.

## I.      Wrongful Denial of ERISA Plan Benefits

United contends that all the derivative ERISA benefit claims should be dismissed because plaintiffs have failed to allege sufficient facts to demonstrate that United's coverage decisions plausibly amounted to an abuse of discretion and therefore constituted an ERISA violation.  In particular, United contends that the plaintiffs' failure to specifically plead which plan provision(s) afford them the claimed coverage entitlement as to each patient is fatal to their ability to state a plausible claim under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

To survive a motion to dismiss under *Twombly,* plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  The plausibility standard is not a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Twombly* at 555; *Iqbal* at 679.

In analyzing whether plaintiffs have pleaded sufficient facts to demonstrate that United's coverage determinations plausibly amounted to an abuse of discretion, the court is  "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal* at 678. Rather, legal conclusions must be supported by factual allegations to survive a motion to dismiss; a "formulaic recitation of the elements of a cause of action will not do." *Id.*

The court's analysis of the sufficiency of plaintiffs' derivative ERISA benefit claims under this standard begins with the recognition that benefits payable under an ERISA plan are limited to the benefits specified in the plan. *Clair v. Harris Trust & Savings Bank*, 190 F.3d 495 (7th Cir. 1999).  Accordingly, "[a] plaintiff who brings a claim for benefits under ERISA must

identify a specific plan term that confers the benefit in question." *Stewart v. National Education Assn.*, 404 F. Supp. 2d 122, 130 (D.D. C. 2005), citing *Clair* at 499, *aff'd* 471 F.3d 169 (D. C. Cir. 2006).  *See also Midwest Special Surgery, P.C. v. Anthem Ins. Co*., 2010 WL 716105 at *2-3 (E.D. Mo. 2010); *In re Managed Care Litigation*, 20090 WL 742678 (S.D. Fla. 2009); *Steelman v. Prudential Ins. Co of America*, 2007 WL 1080656 at *7 (E.D. Cal. Apr. 4, 2007).  In addition, to state a plausible ERISA claim, the complaint must "provide the court with enough factual information to determine whether the [services] were indeed covered services under the plan," *Advanced Rehabilitation, LLC v United Health Group, Ins*. 2011 WL 995960 (D. N.J.), *aff'd*, 2012 WL 4354782 (3d Cir. 2012); *Broad St. Surgical Centre., LLC v. UnitedHealth Group, Inc.,* 2012 WL 762498 (D.N.J. March 6, 2012).

As applied here, this means plaintiffs must at least identify the specific plan provisions under which coverage is conferred with respect to *each* of the 996 derivative ERISA claims identified in its complaint, and to allege sufficient facts to plausibly show the services rendered to each patient were indeed covered under that *particular* plan.

Plaintiff argues that it has provided and cited specific language from six summary plan descriptions and two certificates of coverage which arguably encompass coverage for the MUA procedures at issue. As to other plans, plaintiffs argue that United has failed to provide plan documents to them despite plaintiffs' requests [Second Amended Complaint, ¶ 46, 93].  The six summary plan descriptions are summarized in plaintiffs' complaint as follows:

**(1) Reed Elsevier Plan**

Plaintiffs describe the definition of "covered health services" in this plan as including "those health services provided for the purpose of preventing, diagnosing or treating a

6

Sickness, Injury, Mental Illness, substance abuse, or their symptoms." Plaintiffs further excerpt from the plan's description of covered "outpatient surgery, diagnostic and therapeutic services" defining "covered health services" to include those received "on an outpatient basis at a Hospital or alternate Facility, including surgery and related services," with benefits payable for "only the facility charge and the charge for required services, supplies and equipment."

**(2)  IBM Medical Plan**

Plaintiffs cite the IBM Plan general insuring clause for "medical services deemed necessary in the diagnosis and treatment of injury, illness and/or pregnancy, as well as certain preventive care services," and the further requirement that "all treatment services or supplies must be generally accepted in the medical profession … as medically necessary and appropriate for the condition being treated." The complaint also cites the IBM Plan definition of "medical necessity" which restricts coverage to those health care services and supplies which are:

-necessary to meet the basic health needs of the covered person;

-rendered in the most cost effective manner and type of setting appropriate for the delivery of the health service;

-consistent in type, frequency and duration of treatment with scientifically based guidelines of national medical or health care coverage organizations or medical branches of  Untied States government agencies;

-consistent with the diagnosis of the condition;

-required for reasons other than the convenience of the covered person or his or her physician.

**(3) The American Airlines Plan**

As cited in the plaintiffs' complaint, the American Airlines Plan extends coverage for facility charges and services and supplies at outpatient surgical facilities as to "medically necessary surgical procedures" which are provided "for the purpose of preventing, diagnosing or treating a sickness injury disease or symptom." The IBM Plan further defines "medical necessity" to require that the supplies and services must be:

-supported by national medical standards of practice;

-consistent with conclusions of prevailing medical  research that demonstrate the health services have beneficial effect on health outcomes, and are based on trials that meet the following designs: (1) well-conducted randomized controlled trials (two or more treatments compared to each other, where  patients are not allowed to choose which treatment is received); (2) well-conducted cohort studies (where patients receiving study treatment are compared to patents receiving standard therapy, with comparison group "nearly identical" to study treatment group);

-the most cost effective method, yielding a similar outcome to the other available alternatives;

-not specifically excluded in any section of the plan.

**(4)  The Delta Non-Pilots Plan**

As cited in plaintiffs' complaint, this Plan covers "those health services supplies or equipment provided for the purpose of preventing, diagnosing or treating a sickness, injury, disease or symptoms," provided that the services are supported by national medical standards of practice consistent with conclusions of prevailing medical research; the most cost effective method yielding a similar outcome to other available alternatives; and not excluded under any "not covered" section of the plan.

**(5) The Hill Manufacturing Company Plan**

Plaintiffs describe the Hill Plan as one covering "health services," including outpatient

surgery and related services, supplies or pharmaceutical products which the plan

administrator determines to be:

-provided for the purpose of preventing, diagnosing or treating a Sickness, Injury Mental
Illness, substance abuse or other symptoms;

-consistent with nationally recognized scientific evidence as available, and prevailing
medical standards and clinical guidelines as described [in the plan];

-not provided for the convenience of the covered person, physician, facility or any other
person;"

-described in the "Certificate" under "Section 1: Covered Health Services" and in the
"Schedule of Benefits," and

- not otherwise excluded under "Section 2 Exclusions and Limitations."

 The Hill Plan expressly defines the following terms for use in applying the above

definitions:

-"Scientific evidence" means the results  of controlled clinical trials or other studies
published in peer reviewed, medical literature generally recognized by the relevant
medical specialty community;

-"Prevailing medical standards and clinical guidelines" means nationally  recognized
profession (sic) standards of care including but not limited to, national consensus
statements, nationally recognized clinical guidelines, and national  specialty society
guidelines.

**(6) The Miami-Dade County Public Schools Plan**

Plaintiffs describe this Plan as one providing benefits for "Covered Health Services"

described in Section 1 of the Plan, unless they are listed as "Not Covered" in Section 2 of

the Plan.  They cite from Section 1, which extends coverage for facility fees and

professional fees associated with "outpatient surgery, diagnostic and therapeutic

9

services," where "only the facility charge and the charge for required services, supplies and equipment" is covered by the plan.

The plaintiffs do not indicate in their complaint which of the 996 claims identified in the composite exhibit to the complaint correspond to which of the six exemplar summary plan descriptions or two certificates of coverage, or which correspond to other plans not cited or described in the complaint; do not attach the full plan documents governing the exemplar plans, and do not cite relevant portions of the "exclusionary" sections from the referenced exemplar plans.[1]

As to the remaining plans, they allege "upon information and belief" that "all of the health insurance plans at issue define covered benefits in a manner consistent with the language" of the six exemplar plans and  "template language for certificates  of coverage" employed by United for its Florida-based health plans, without providing any factual basis for this supposition.

Plaintiffs also allege "upon information and belief" that each of the six exemplar plans contains "Exclusions from Coverage" sections, none of which specifically identify MUAs as non-covered procedures [¶¶ 52-56].  Finally, Plaintiffs conclude that United's denial of the MUA claims at issue "violated the terms of the relevant plans wherein United agreed to pay for medically necessary (and non-experimental, non-investigational) procedures as a covered service or a covered benefit under each patient's plan" [¶58], again without providing any supporting

---

[1] Beyond lists of specific treatments excluded from the plans, referenced in plaintiffs' complaint, the exemplar plans also contain exclusions for the broad category of "experimental or investigational" services or supplies [ECF NO. 76-7; 76-2 at 213; 76-3 at 137-38; 76-5 at 71; 76-8 at 44-45; 76-10 at 39; 28-1 at 24; 28-2 at 30] which plaintiffs do not cite in their complaint, despite acknowledgment that some of the claim denials were premised on the exclusion for unproven, experimental or investigational services.

textual support from the specific relevant plan language to support this naked assertion of coverage.

These allegations do not establish, or even address, whether MUAs are a covered benefit under the cited exemplar plans or how MUAs fall within the definition of "medically necessary" treatment under any of those plans. The plaintiffs' selective reference to coverage excerpts from these plans, without also including a citation to relevant exclusionary provisions (which in some plans are expressly incorporated into the definition of what is covered) does not provide the court with enough factual information to determine whether the MUAs were actually covered services even under the six exemplar summary plan descriptions which plaintiffs selectively cite.   The further allegation that none of the six exemplar plans contain language that specifically excludes MUAs from coverage does nothing to assist the court in conducting this inquiry.

As to the remaining plans which plaintiffs do not identify or describe, plaintiffs provide no support for the speculative allegation, purportedly made "upon information and belief," that all 300 of the plans at issue contain "similar" coverage language.  Without a precise  description of the relevant coverage and exclusionary language of all plans,'  and no allegations showing

---

' Plaintiffs' allegation that the defendants have failed or refused to provide plaintiffs with requested plan documents does not cure this fundamental pleading deficiency. ERISA provides that plan administrators shall "upon written request of any participant or beneficiary furnish a copy of the latest updated summary, plan description." 29 U.S.C. §1024(b) (4).  While a "beneficiary" may enforce this obligation under the ERISA civil enforcement prevision, §1332(c), a third party to the contract may not.

Plaintiffs may have received an assignment of the right to direct recovery of benefits from United, but this is not the same thing as same thing as an assignment of all ERISA rights and claims held by the participants and beneficiaries under the plans, and does not confer "beneficiary" status upon plaintiffs for purposes of conferring the right to demand or standing to sue for recovery of plan documents under ERISA. *Barix Clinics of Ohio v Longaberger Family of Companies Group Medical Plan*, 459 F. Supp. 2d 617 (S.D. Ohio 2005), citing *Hermann Hospital v MEBA Medical and Benefits Plan* 959 F.2d 569 (5th Cir. 1992) ("Neither [the insured's] act of authorizing the Plan to make payments directly to [the medical provider], nor [the insured's] assignment of the right to recover payments for benefits provided, elevated  [the provider] to the status of beneficiary under the Plan.").

how MUAs fall within the various definitions of "medical necessity" incorporated by those plans, and outside the definition of "experimental or investigational" services excluded by the plans, plaintiffs fails to state plausible ERISA benefits claims upon which relief can be granted. *See e.g. Paragon Office Services, LLC v. UnitedHealthcare Insurance Co.*, 2012 WL 5868249 (N.D. Tex. 2012)("Because, to recover, plaintiffs must show that defendants acted arbitrarily and capriciously under the terms of the plan, it is necessary to state a plausible claim for relief that they at least identify the precise plan provisions on which they rely"); *In re Managed Care Litigation*, 2009 WL 742678 (S.D. Fla. 2009)(granting motion to dismiss §1132(a)(1)(B) claim where complaint did not identify relevant plan terms).

Further, the generalized allegation that all the MUAs for which coverage is sought were all "medically necessary, established medical procedures for the specific medical underlying conditions of each patient in this case and were not experimental or investigatory procedures [Complaint, paragraph 28], joined with allegation that "MUAs have been established as medically necessary safe and effective for the purpose of relieving the patients' underlying condition(s)" and are "listed as Category 1 CPT Codes in the American Medical. Association's AMA Codebook of Reimbursable Procedures" do not add weight to the plausibility of plaintiffs'

Further, as noted in *Barix*, "[a] plan administrator is under no obligation to disclose plan documents to third parties without written authorization from a participant or beneficiary," *Barix* at 625, citing *Bartling v Fruehauf Corp.*, 29 F.3d 1062 (6th Cir. 1994), and "it would be unfair to penalize an administrator for failing to disclose plan documents to a third party who has not informed the administrator of its status as an assignee and putative beneficiary."

In this case, plaintiffs do not allege that they submitted to United (or the plan administrator) any written request or authorization *from the patients* allowing disclosure of plan documents directly to them. Nor do they allege that they informed United or the plan administrator that they had received complete assignments from plan participants or beneficiaries, or that they were requesting plan documents pursuant to their purported designation as a "beneficiary" by any plan participant. Without such a predicate, they fail to allege a violation of 29 U.S.C. §1024(b)(4), and any corresponding basis which might excuse their failure to properly allege the terms of each plan upon which each of the assigned claims at issue is predicated.

claims. As noted by the Third Circuit in *Advanced Rehabilitation, supra*, "[A] mere CPT code is not enough to establish a plausible entitlement to relief… [I]n its introduction to the Codebook, the AMA warns that "[i]nclusion in the … Codebook does not represent endorsement… of any particular diagnostic or therapeutic procedure," and that"[i]nclusion or exclusion of a procedure does not imply any health insurance coverage or reimbursement policy."

Accordingly, the court shall grant United's motion to dismiss plaintiffs' § 1132(a) (1) (B) claims for unpaid ERISA benefits due under the terms of the plans for failure to state a claim upon which relief can be granted.  The court shall dismiss this claim without prejudice to the refilling of an amended complaint which seeks to cure the deficiencies outlined in this order; however, while granting leave to amend, the court expresses serious reservation over the permissibility of the pursuit of the voluminous claims aggregated in this single proceeding under the Federal Rules of Civil Procedure. With nearly one thousand claims arising from separate transactions and occurrences aggregated in this proceeding, the plaintiffs' complaint appears to structure an impermissible way of circumventing the federal class action requirements, including the requirements of Rule 23.

Further, in light of the very limited nature of the assignment of rights under which plaintiffs proceed in this action, the court perceives a potentially fatal deficiency with the current party alignment in this litigation -- which notably does not include the patients who still own the underlying ERISA claims and who remain fully responsible for the full amount of the medical bills at issue regardless of the outcome of this lawsuit.

Accordingly, if plaintiffs opt to re-plead the derivative ERISA benefit claims aggregated in this action, they must conform any amended pleading submitted with the compulsory and

13

permissive joinder restrictions imposed by Rules 19 and 20, as well as the plaintiff denomination requirements of Rule 17.   In the event plaintiffs choose to continue pursuit of this action as assignees of the 996 underlying ERISA claims brought on behalf of approximately 500 patients, they are further directed to show cause, by separate statement simultaneously submitted to the court, as to why the court should not order the compulsory joinder of the patients as necessary or indispensable parties under Rule 19, and direct the severance of each individual claim for pursuit in a separate lawsuit pursuant to Rules 20(a) and 21, as more particularly discussed below.

### SHOW CAUSE ORDER RE: MISJOINDER OF CLAIMS AND PARTIES

Because the partial assignment of rights upon which plaintiffs predicate their standing to assert the derivative ERISA benefit claims is not an assignment of every right or cause of action which the participants or beneficiaries may have under ERISA, *see Dallas County Hosp. District v Associates' Health & Welfare Plan,* 293 F.3d 282(5th Cir. 2002)(hospital's entitlement to plan benefits and derivative standing to sue as assignee "is of no relevance in determining whether it is an ERISA beneficiary);  *Hermann Hospital v MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988), overruled in part on other grounds, *Access Mediquip, L.L.C. v. UnitedHealthCare Ins. Co.,* 698 F.3d 229 (5th Cir. 2012),  the patients on whose behalf the ERISA benefit claims are pursued still own the claims.  Further, because the partial assignment of claims was not accepted by the plaintiff medical providers as full payment for their services, but rather by its terms was executed solely as a convenience for the patients, who are charged with full responsible for the underlying medical bills regardless of the outcome of the insurance claim, there is at least a suggestion that the patient/assignors necessarily retain an interest in these claims and are additional real parties in interest to this litigation.  *U. S. ex rel.  Eisenstein v. City*

*of New York,* 556 U.S. 928 (2009), citing 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §1545, pp. 351-353 (2d ed. 1990)(""[W]hen there has been … a partial assignment the assignor and the assignee each retain an interest in the claim and are both real parties in interest.); *Meridien Int'l Bank Ltd. v National Union Fire Ins. Co of Pittsburgh, PA,* 1994 WL 481944 (S.D. N.Y 1994) (""[W]here the assignment is not a complete assignment but only the transfer of the equitable interest in the proceeds of the policy, [] the insured assignor remains the real party in interest." ), quoting 18 George J. Couch, Cyclopedia of Insurance law 74.313 at 778 (1987); *Texas San Juan Oil Corp v An-Son Offshore Drilling Co.,* 194 F. Supp.396 (S.D.N.Y. 1961).

In addition, because the provider plaintiff/assignees did not accept the assignments of benefits as payment in full, leaving the patients exposed to liability for payment in full regardless of the outcome of this litigation, and because the patient/assignors did not transfer all rights and causes of action under their respective health insurance plans, a question also arises as to whether the joinder of the assignor/patients as indispensable or necessary parties is required under Rule 19. Accordingly, should plaintiffs attempt to re-plead their derivative ERISA benefit claims in Count 1, they shall be simultaneously file a separate statement of cause, if any there be, as to why the court should not:

(1) order the joinder of the patients as real parties in interest under Rule 17(a), and/or as indispensable and necessary parties under Rule 19(a), [1] and/or

---

[1]Rule 19(a) provides that a party is necessary if: (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of this claimed interest.

(2) exercise its independent duty to prevent improperly joined claims and parties from proceeding in a single case, [1] *George v Smith*, 507 F.3d 605 (7th Cir. 2007), by ordering, pursuant to Rule 21, the severance of the unrelated 996 individual ERISA claims currently aggregated in this proceeding into separate lawsuits, and directing the plaintiffs to submit a separate filing fee for each severed claim that they choose to pursue as a separate suit. *See e.g. Grennell v Western Southern Life Ins. Co.,* 298 F. Supp. 2d 390 (S.D. W. Va. 2004)(2200 individual policy holders asserting fraudulent sales practice claims against insurer improperly joined as joint plaintiffs under Rule 20(a), even though they all purchased same basic product, where each purchase was induced by a different misrepresentation and claims hence did not arise out of same transaction, occurrence or series of occurrence); *Sunshine Imaging Association/WNY MRI v. GEICO,* 66 A.D.3d 1419, 885 N.Y.S.2d 557 (N.Y. App. 4th Dept. 2009)(severance warranted in action for recovery of no-fault benefits from patients' insurer brought by radiological services provider as assignee of 14 patients, where causes of action arose from 14 different automobile accidents on various dates in which 14 unrelated assignors suffered diverse injuries and required different medical treatment). *See generally DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006)(although district court has discretion to choose either severance or dismissal in remedying misjoinder, it is permitted under Rule 21 to opt for the latter only if "just," i.e. if doing so "will

---

In this case, with regard to the second criterion, certainly the patients have an interest relating to the subject of this action, as they remain fully liable for the full amount of the medical bills at issue under the terms of the assignment – regardless of the outcome of this case- and their absence may well impede their ability to protect their interest in collecting benefits under their respective plans in order to eliminate or offset that liability. Further, the failure to join the patients may put the defendants at risk of incurring double or inconsistent liabilities, as the patients retain ownership of all causes of action under the ERISA plans and could theoretically bring separate suits against United in the future.

[1] Rule 20 prohibits plaintiffs from joining together to file one action unless their claims arise out of "the same transaction, occurrence or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action."

not prejudice any substantial   right," such as loss of otherwise timely claims). *See generally Acevedo Garcia v Monroig*, 351 F.3d 547 (1ˢᵗ Cir. 2003).

## II.        Breach of Fiduciary Duty

The defendants next argue that the plaintiffs lack standing to bring the breach of fiduciary claims asserted under §1132(a) (3) by assignment.  As indicated above, a mere assignments of the right to direct payment of benefits—as alleged in this case – is insufficient on its face to confer "beneficiary" status on the plaintiffs, as it gives no indication that the patient/assignors intended to assign their right to bring causes of action under other provisions of ERISA which do not relate to benefits reimbursements.   *See Dallas Hospital; Hermann Hospital, supra*. *See also Texas Life, Accident Health & Hospital Service Ins. Guaranty Ass'n. v. Gaylord Entertainment Co*., 105 F.3d 210 (5ᵗʰ Cir. 1988).   Plaintiffs seemingly overlook this distinction, responding with the well-established rule that providers who receive benefit assignments may sue directly for ERISA benefits under §1132(a) (1) (B).  In this regard, they rely exclusively on *Connecticut State Dental Assn. v Anthem Health Plans, Inc*. 591 F.3d 1337 (11ᵗʰ Cir. 2009), which involved a claim for unpaid benefits under §1132(a) (1) (B) and which therefore did not address whether assignments of the right to reimbursement were effective to assign claims under §§1132(a) (2) and (a) (3) as well.  *See Conn. State Dental*, 591 F. 3d at 1350-53 .

Following careful review of the assignment language which plaintiffs recite in the complaint, the court concludes that the medical provider plaintiffs fail to allege sufficient facts to show standing to bring a derivative breach fiduciary duty claim as alleged at Count 2 of the complaint. The partial assignments referenced by plaintiffs do not alter the legal relationship between United and its patient/subscribers, but rather simply provide the convenience of allowing the

subscribers to obtain needed health care on the implicit promise of later payment of insurance benefits to the provider.  Accordingly,  the assignments  as described are ineffective to assign any right  to pursue breach of fiduciary duty claims,  and the plaintiffs' §1132(a)(3) claims shall be dismissed with prejudice for lack of standing and failure to state a claim upon which relief may be granted. *See in re Wellpoint, Inc. Out-of-Network UCR Rates Litigation,* ___ F. Supp. 2d ___, 2012 WL 5193815 (C.D. Cal. Sept. 6, 2012)(providers inadequately alleged that they were assigned patients' ERISA claims against insurer for breach of fiduciary duty and equitable relief as required to establish Article III standing to bring patients' claims).

Additionally, and in the alternative, plaintiffs fail to state derivative breach of fiduciary duty claims to the extent they premise these claims on an alleged improper, arbitrary or capricious denial of benefits. *See Lifecare Management Services LLC v Insurance Management Administrators, Inc.,* ___ F.3d ___, 2013 WL 57035 (5th Cir. 2013) ("[w]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to 502(a)(3)"), citing *McCall v Burlington Northern/ Santa Fe Co.*, 237 F.3d 506 (5th Cir. 2000); *Capone v Aetna Life Ins. Co.,* 592 F.3d 1189 (11th Cir. 2010)(employee challenging denial of benefits under ERISA plan  precluded from bringing a breach of fiduciary duty claim based on wrongful denial of benefits);  *Wilkins v Baptist Healthcare System, Inc.,* 150 F.3d 609, 616 (6th Cir. 1998) (ERISA claimants may not "simply characterize a denial of benefits as a breach of fiduciary duty").

Finally, to the extent the  breach of fiduciary duty claims are premised upon misleading or false representations made in telephone conversations between United and the plaintiffs'

employees, which appears to be the focal thrust of plaintiffs' claims,  these  are independent –
not derivative – claims asserted directly by plaintiffs.  However, the complaint alleges no set of
facts which would plausibly support the existence of independent fiduciary duties owed directly
to plaintiffs, and therefore fails to state any direct claim for breach of fiduciary duty upon which
relief may be granted.

Accordingly, the court concludes that plaintiffs lack standing to bring  derivative breach of
fiduciary duty claims as a matter of law, and that their direct claims are entirely  lacking in the
factual support and clarity needed to articulate a plausible claim under 29 U.S.C. §1132(a)(3).

### III.    Estoppel (Count 4)

Plaintiffs premise their equitable estoppel claims solely on communications which allegedly
took place directly between the plaintiffs' representatives and the defendant's agents.  Thus,
although plaintiffs label and purport to bring these claims as derivative federal common law
ERISA claims, they are clearly is unsustainable as such. Rather, plaintiffs' estoppel claims
survive only to the extent plaintiffs are able to state sufficient facts to support a direct federal
common law claim of equitable estoppel.

Under federal common law, estoppel may not be invoked to enlarge or extend the coverages
specified in an insurance contract.  Put another way, estoppel may not be used to create
contractual liability where no contract originally existed.  This rule does not apply, however,
where estoppel is premised on representations which amount to an interpretation of an
ambiguous provision of a contract or insurance plan.  *Kane v. Aetna Life Ins*., 893 F.2d 1283
(11th Cir. 1990) (employee seeking to recover benefits under ERISA plan could invoke common
law doctrine of equitable estoppel to require insurance company to pay infant's medical expenses

following adoption, where employee did not rely on estoppel in order to modify terms of ERISA-qualified plan but rather to hold insurer to its agent's interpretation of ambiguous language in the plan).

As the plaintiffs' complaint now stands, it does not allege sufficient facts to bring the estoppel claim within the parameters of this narrowly defined exception.  That is, the complaint does not allege facts showing that the alleged verbal misrepresentations of defendants' agents constituted interpretations of *ambiguous* ERISA plan language:  As discussed in Section I, *supra,* the complaint fails to even identify the specific plan language under which the claimed benefits are allegedly due. Without a description of the relevant insuring and exclusionary plan language, as it is specifically tied to each of the 996 individual procedures at issue, it is impossible to determine whether an ambiguity exists pertaining to the "medical necessity" of the MUA procedures as they relate to each patient which would permit the assertion of independent equitable estoppel claims by plaintiffs.

Accordingly, the equitable estoppel claims asserted in Count 4 shall be dismissed for failure to allege sufficient facts to state a plausible claim under *Twombly*, with the same limitations and admonitions on re-pleading these claims as those applicable to the ERISA benefit claims outlined above.

### IV.    Failure to Provide Plan Documents

Defendants also move to dismiss Count 3 of the complaint, which alleges a violation of 29 U.S.C. §1024(b) (4).  That section provides that a plan administrator shall, "upon written request of any participant or beneficiary," furnish a copy of the summary plan description and other plan documents under which the plan is established or operated.    The

administrators' failure to comply with such a request renders the administrator liable to such participant or beneficiary in an amount of up to $100 per day, with the amount of award at the discretion of the court.  29 U.S.C. §1132(c) (1) (B).

Defendants argue that there are insufficient facts alleged to show plaintiff's standing to bring this claim, where the facts alleged do not show plaintiffs' status as "beneficiaries" under any plan. Alternatively, defendants argue that the complaint does not sufficiently allege defendants' status as plan administrators to whom this statutory obligation might attach.

Plaintiffs argue that they are "beneficiaries," by virtue of the assignment of benefits recited in the complaint.  As the court has now ruled, however, while an assignee provider may have standing to sue for assigned benefits allegedly due under an ERISA plan; this does not render the assignee a "beneficiary" for all purposes under ERISA. *Dallas County Hosp. District v Associates Health & Welfare Plan*, 293 F.3d 282 (5th Cir. 2002); *Hermann Hospital v MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988)

Because the complaint in this case alleges only that the patient participants or beneficiary assigned the right to direct payment for unpaid charges to the plaintiffs, and does not allege that the patients assigned all rights under their plans, or that plaintiffs ever made an authorized request for plan documents from defendants or other plan administrator(s) supported by a signed authorization from the relevant patient(s),  plaintiffs' fail to state a plausible claim upon which relief may be granted under § 1132(c) (1) (b) for failure to provide plan documents upon written request of "any participant or beneficiary." *Bartling v Fruehauf Corp.,* 29 F.3d 1062 (6th Cir. 1994) (plan administrator is under no obligation to

disclose plan documents to third parties without written authorization from participant or beneficiary); *Barix Clinics of Ohio, Inc. v. Longaberger Family of Companies Group Medical Plan*, 459 F.Supp.2d 617 (S.D. Ohio 2005); *Amich v Sedgwick Claims Management Services, Inc.,* 2010 WL 4923042 (E.D. Wis. 2010). It is therefore unnecessary to reach the defendants' alternative challenge to this claim based on lack of sufficient facts to show existence of its status as "plan administrator."  Count 3 of the complaint shall accordingly be dismissed with prejudice for failure to state a claim for which relief may be granted.

## V.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The claims set forth in Count 1 for wrongful denial of ERISA benefits are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted.  The court shall permit plaintiffs one further and final opportunity to replead this claim to correct the pleading deficiencies outlined in this order by filing a third amended complaint within **TWENTY (20) DAYS** from the date of entry of this order.

2. The claims set forth in Count 4 for equitable estoppel are **DISMISSED WITHOUT PRJEUDICE** for failure to state a claim upon which relief may be granted.  The court shall permit plaintiffs one further and final opportunity to replead this claim to correct the pleading deficiencies outlined in this order by filing a third amended complaint within **TWENTY (20) DAYS** from the date of entry of this order.

3. If plaintiffs opt to re-plead either the derivative ERISA benefits claims or direct equitable estoppel claims, they shall further show cause, by separate statement filed with the court, as to (1) why all  patients associated with the underlying benefit claims are not  subject to

22

compulsory joinder as real parties in interest and/or necessary and indispensable parties to this cause, and (2) why the court should not exercise its independent duty to avoid improper joinder of claims and parties and direct a severance of each individual derivative ERISA benefit claim and corresponding direct equitable estoppel claim, to be tried as separate lawsuits and charged a separate filing fee as to each such individual patient claim on which plaintiffs opt to proceed.

4. The claims set forth in Count 2 for breach of fiduciary duty, either as derivative or direct claims, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

5. The claims set forth in Count 3 for failure to provide plan documents are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

6. In light of this ruling, this action is **STRICKEN** from the March, 2013 trial docket on which it was previously scheduled to be tried, and the parties' joint request for continuance of trial and amendment of various pretrial deadlines [ECF No. 119] is **DENIED as MOOT**.

7. All proceedings upon the defendants' counterclaims are **STAYED** pending further notice from the court. Plaintiffs' motion to dismiss counterclaims [ECF No. 125] and the parties' joint motion regarding briefing on the motion to dismiss counter-claims [ECF No. 126] are **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 14TH day of January, 2013.

Daniel T. K. Hurley
United States District Judge

cc. all counsel

23