UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81589-CIV-HURLEY

UNITED HEALTHCARE SERVICES, INC. and
UNITEDHEALTHCARE INSURANCE COMPANY,
        Plaintiffs,

vs.

SANCTUARY SURGICAL CENTRE, INC.,
GLADIOLUS SURGERY CENTER, LLC,
PHYSICIANS SURGICAL GROUP, LLC,
NAPLES PHYSICIANS SURGICAL GROUP, LLC,
PSG OF S. FLORIDA, LLC,
EDWARD LIVA, CHRISTOPHER LIVA and CAROLYN LIVA
a/k/a CAROL LIVA or CAROL VIA or CAROLYN VIA,
        Defendants.
_____/

ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT[1] [151]

    This matter is before the court on the defendants' motion to dismiss the plaintiffs' amended

complaint [ECF 151] on ground that all state law fraud-based claims are preempted by the Employee

Retirement Income Security Act ("ERISA"), and alternatively, on ground that the plaintiffs' fraud-

based claims fail to satisfy the specificity requirements of Rule 9 (b) and fail to state a claim upon

which relief may be granted.  For reasons set forth below, the court shall deny the motion.

---

[1]  The above-named defendants, Sanctuary Surgical Centre, Inc., et al.  ("medical providers"), were originally
named as party plaintiffs in the initial complaint filed in this proceeding, and also  appeared as defendants-in-
counterclaim in the counterclaim lodged by the originally named defendants,  United Healthcare and UnitedHealthcare
Insurance Company ("United").  As the defendants-in-counterclaim, the medical providers moved to dismiss United's
counterclaim for failure to state a claim on which relief may be granted [ECF 151].  Since then, the original claims of the
medical providers have been dismissed with prejudice [ECF 136], and the court has directed a realignment of the parties
to reflect United's current status as the sole remaining claimant in this proceeding, and the medical providers' status as
the defendants to the remaining claims [ECF 170].  Consistent with this party realignment, the court now reclassifies
United's earlier filed "Amended Counterclaim"  [ECF No. 144] as United's operative "Amended Complaint," and
reclassifies the medical providers earlier filed motion to dismiss the counterclaim [ECF 151] as the defendants' "Motion
to Dismiss Plaintiff's Amended Complaint."

## I.  BACKGROUND AND PROCEDURAL HISTORY

Defendants Sanctuary Surgical Centre, Inc. ("Sanctuary") and Gladiolus Surgery Centre, Inc. ("Gladiolus") are ambulatory surgical centers.  Defendants Physicians Surgical Group, LLC, Naples Physicians Surgical Group, LLC, and PSG of S. Florida, LLC ("the PSG Entities") are billing companies owned by Edward Liva, Christopher Liva and Carolyn Liva ("the Livas"). Plaintiffs United Healthcare Services Inc. and UnitedHealthcare Insurance Company (cumulatively "United") are health care benefits and health insurance providers to subscribers under a variety of individual and group health insurance plans.  United also serves as a third-party administrator for several benefit plans which are self-funded by various employers, and in that role is responsible for making all coverage and payment determinations under the self-funded plans.

In its Amended Complaint, United alleges that between 2006 and 2009, the defendants perpetrated a massive scheme to defraud United of over $10 million by performing surgical procedures known as "manipulation under anesthesia" ("MUA") on hundreds of chiropractic patients at defendants'out-of-network ambulatory surgical centers located in Boca Raton (Sanctuary) and Fort Meyers (Gladiolus).  According to United, the MUA bills were fraudulent because each MUA procedure was the direct result of an illegal kickback and fee-splitting arrangement, and each MUA bill contained material misrepresentations of fact regarding the identity of the medical provider who performed the MUA, the patient's diagnosis and condition, and the procedures actually performed.  The Amended  Complaint includes a detailed appendix itemizing 486 of such MUA procedures allegedly performed at Sanctuary and Gladiolus [Amended  Complaint, Ex. 1] [ECF 144-2],  and is supported by sworn declarations from an osteopathic  physician and  chiropractor allegedly involved in the scheme [Amended Complaint, Ex. 2, 3 ] [ECF 144-3, 144-4].

2

Specifically, United alleges that defendants engaged in an extensive advertising and marketing campaign, netting dozens of chiropractors who were paid between $4000 and $5000 per MUA patient referral, all in violation of Florida's Patient Brokering Act, Fla. Stat. § 817.505 and Anti-Kickback Statute, Fla. Stat. § 456.054, as well as the prohibition against physician fee-splitting, § Fla. Stat. 458.331(1)(i). In addition, United alleges that defendants violated the statutory prohibition against non-chiropractors engaging chiropractors as independent contractors and interfering with the chiropractors' clinical judgment, Fla. Stat. § 460.4167, as well as the prohibition against waiver of patient co-payments and deductibles, Fla. Stat. § 817.234 (7) (a), and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA"). Ultimately, United alleges that defendants fraudulently induced United to pay for spinal MUA procedures by creating false medical records and bills[2] which misrepresented the patients' diagnoses and conditions, misrepresented the procedures performed,[3] and misrepresented that the MUAs were performed by licensed doctors of osteopathic medicine, when, in fact, the procedures were performed by chiropractors who were not licensed to perform surgery and who received illegal kickbacks for their role in delivering patients to the facility.

On this background, United asserts the following claims against Sanctuary, Gladiolus, the PSG Entities, and the Livas:

(1) common law fraud and misrepresentation (Count 1), based on defendants' submission of

---

[2] According to United, the PSG entities which processed the billings were secretly controlled by the Livas, who created these entities to serve as shell companies with nominee chiropractor owners and operators.

[3] Knowing that spinal MUA charges would not be reimbursed by United, defendants allegedly invented false diagnoses of non-spinal conditions (e.g. adhesive capsulitis of the shoulders, pelvic ring fractures, enthesopathy of the hips) in order to justify MUAs at other areas of the body, and then submitted charges to United for those manipulations to mask and conceal the fact that the surgical procedure actually performed was a spinal manipulation under anesthesia [ECF 144-3].

fraudulent claims for reimbursement of MUA procedures, by using procedure codes that falsely represented the actual procedures performed; using false bills and template operative reports that falsely reflected that the patients were diagnosed by an osteopathic physician with conditions warranting MUA; forging the signatures of the osteopathic physician who purportedly performed the procedure on letters of medical necessity; falsely representing that the MUA procedures were performed by a licensed osteopathic physician, when in most instances the procedures were actually performed by chiropractors; falsely representing that the procedures were performed under general anesthesia when in reality the procedures were performed under conscious sedation; routinely waiving patient co-payments and deductibles to induce the patients to undergo the procedures in violation of Florida law, and failing to disclose the illegal incentives offered to the patients, including payment of travel and/or lodging expenses;

(2)  common law fraud and misrepresentation (Count 2), based on defendants' routine waiver of patient co-payment and deductible obligations, followed by defendants' submission of insurance claims to the insurance carriers at full price, and acceptance of available insurance benefits as  payment in full for their  services, instead of reducing the billed charges by  an amount equal to the waived deductible, co-payment or co-insurance requirement, a device which effectively misrepresented and overstated the applicable charges submitted to the insurance companies, in violation of § 817.234 (7) (a) and § 817.234 (11), Fla. Stat.;

(3) unjust enrichment (Count 3), based on defendants' submission of insurance claims that overstated applicable charges and sought payment for services that were misrepresented in the claim forms;

(4) violation of  Florida's Unfair and Deceptive Trade Practice Act ("FDUPTA") (Count 4), § 501.201(1), Fla. Stat., prohibiting "[u]nfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce," based on defendants' violation of numerous laws and regulations designed to protect the public safety, including Florida's civil theft statute;  patient brokering statute, anti-kickback statute, and insurance fraud statutes.

(5) civil theft (Count 5),  in violation of  § 772.11 and § 812.014, Fla. Stat., based on defendants' submission of  fraudulent information on insurance claims, and concealment of fact that defendants were not collecting co-payments, deductibles or co-insurance from patients, and by falsely representing the patient's diagnoses and identities of providers who performed the services.

In their pending motion to dismiss, defendants contend that all of United's claims are preempted by the Employee Retirement Income Security Act (ERISA),  either as claims which could have been brought under ERISA's exhaustive remedial measures (complete preemption), or as claims which relate to an ERISA-governed plan (defensive preemption).  Additionally and in the alternative,

defendants contend that United's common law fraud claim (Count 1) based on false claim submissions fails to satisfy the heightened pleading requirements under Rule 9(b); that the common law fraud claim (Count 2) based on violation of Florida's waiver of patient responsibility statute, § 817.234 (7), Fla. Stat., fails to state a cognizable claim because it does not allege any criminal adjudication of fraud; that the civil theft claim (Count 5) fails to state a cognizable claim because the civil theft statute excepts the "provision of healthcare" from its penumbra; and finally, that all claims are in the nature of "recoupment" claims which are time-barred under § 627.6131(6) (b), Fla. Stat. These arguments are discussed, in turn, in the discussion which follows.

## II. DISCUSSION

### A. ERISA PREEMPTION

There are two strands of ERISA preemption: (1) express preemption under ERISA § 514 (a), 29 U.S.C. § 1144 (a), also known as "defensive" or "conflict" preemption and (2) complete or "super" preemption due to a conflict with ERISA's exclusive remedial scheme as set forth in ERISA § 502 (a), 29 U.S.C. § 1132 (a). *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009); *Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011), *cert. den.*, 132 S. Ct. 2780 (2012). Complete preemption derives from ERISA's civil enforcement provision § 502(a), which is viewed as having such "extraordinary" preemptive power that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[4] *Anthem Health* at 1344. It is narrower, and differs from, defensive preemption because it is jurisdictional in nature, while

---

[4] Under the "well-pleaded complaint" rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S. Ct. 2058, 156 L.Ed.2d 1 (2003).

defensive or conflict preemption functions as an affirmative defense. *Id.* In this case, defendants invoke both strands of ERISA preemption.

### 1.    Complete ERISA Preemption

Recognizing "that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," the complete preemption doctrine exists as a "corollary of the well-pleaded complaint rule," *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004), quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).

The Supreme Court has designated Section 502 (a) of ERISA as "one of those provisions with such 'extraordinary preemptive power' that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Pasack,* 388 F.3d at 399-400, quoting *Aetna Health v. Davila*, 542 U.S. 200, 211, 124 S. Ct. 2488, 159 L. Ed.2d 312 (2004). ERISA § 502(a) provides in pertinent part:

> A civil action may be brought –
>
> (1) by a participant or beneficiary –
>> …
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>> …
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. §1132 (a).

In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004),

the Supreme Court set forth the following two-part test for determining complete ERISA preemption under § 502 (a):  (1) whether the plaintiff could have brought his claim under ERISA's civil enforcement mechanism, § 502(a), and   (2) whether no other legal duty supports the plaintiff's claim.  Because the *Davila* test is framed in the conjunctive, a state law cause of action is completely preempted by § 502(a) only if *both* prongs of the test are met.  *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011); *Fossen v. Blue Cross and Blue Shield of Montana, Inc*., 660 F.3d 1102 (9th Cir. 2011); *Pascack*, 388 F.3d at 400.

In *Davila,* the plaintiffs, a participant and a beneficiary, sued their respective ERISA plan administrators in state court alleging violations of a state health care liability law based on an alleged failure to exercise "ordinary care" in denying the plaintiffs' claims for health care benefits. Observing that the claims were based solely on the plan's denial of benefits under the plan, and that defendant's only relationship with plaintiffs was as administrator of their employer's ERISA plan, the *Davila* court concluded, first, that the plaintiffs could have brought their claims under ERISA § 502(a) (1) (B)  because they "complain[ed] only about denials of coverage promised under the terms of ERISA regulated employee benefit plans," and could have resorted to their remedies under ERISA by filing a claim for benefits  and/or seeking a preliminary injunction. *Davila*, 542 U.S. at 211-12, 124 S Ct. at 2497.  Second, the court assessed whether the duty on which the plaintiffs' claims was based arose independently of the plan.  While acknowledging that state law imposed a distinct duty on managed care entities to use "ordinary care" in making health care decisions, the court found no "independent duty" of care because the administrators' liability on the state law claims "derive[d] entirely from the particular rights and obligations established by the benefit plans," and "liability would exist [ ] only because of [the defendants'] administration of ERISA-regulated

7

benefit plans." *Id* at 213, 124 S. Ct. at 2498.

   **1.  Could United have brought its claims under § 502 (a) (3)?**

   Employing the *Davila* test here, the court first inquires as to whether United, "at some point

in time," could have brought its claims for recoupment of benefits paid on the allegedly fraudulent

claims submitted by defendants under ERISA § 502(a). *Davila*, 542 U.S. at 210, 124 S. Ct. at 2496.

As a threshold matter, it is apparent that United's claims could not originate under Section 502 (a)

(1), which states, in relevant part, that "[a] civil action may be brought ... by a participant or

beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the

terms of the plan or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §

1132(a) (1).  The parties agree that United is not a participant or beneficiary under any ERISA plan,

rendering this section inapplicable.

   The examination thus turns to Section 502 (a) (3), which permits a participant, beneficiary or

"fiduciary" to bring a civil action: "(A) to enjoin any act or practice which violates any provision of

this sub-chapter or the terms of the plan, or (B) to obtain the appropriate equitable relief (i) to redress

such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29

U.S.C. §1132(a) (3).

   ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary

control respecting management of [a] plan or exercises any authority or control respecting

management or disposition of its assets." 29 U.S.C. § 1002 (21) (A) (i).  It also includes one who has

"any discretionary authority or discretionary responsibility in the administration of such [a] plan."

*Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S. Ct. 948 (1989).

   An insurance company with discretionary responsibility over the award of benefits under an

employee benefits plan is considered to operate as a "fiduciary" within the meaning of this ERISA definition, *Wachtel v. Health Net, Inc*., 482 F.3d 225 (3d Cir. 2007), and in its role as fiduciary may "obtain appropriate equitable relief [under 502] to enforce any provisions ... of the terms of the plan.." *Metropolitan Life Ins. Co. v. Rice*, 501 F.3d 271 (3d Cir. 2007).

Thus, a claim is actionable under § 502 (a) (3) only if it is brought by an entity exercising discretionary responsibility *in an action brought to enforce the terms of a plan*.  As explained by district court in *Aetna Health Inc. v Health Goals Chiropractic Center,* 2011 WL 1343047 (D. N.J. 2011) at * 4:

> A plaintiff that does not seek to enforce the terms of a plan is not a fiduciary, and its claim cannot proceed under § 502.  Alternatively, if the plaintiff initiates suit to enforce the terms of the plan, it is a fiduciary and its claim is actionable under § 502. Similarly, a plaintiff may act as fiduciary in some matters, but not in others.  The mere fact that a plaintiff is sometimes a fiduciary does not automatically require it to always act as a fiduciary.

*Id.* citing *Aetna Health Inc. v. Srinivasan,* 2010 WL 5392697 at * 3 (D. N.J. 2010).  *See also US Airways, Inc. v. McCutchen*, ___ U.S. ___, 133 S. Ct. 1537, 185 L. Ed. 2d 654 (April 16, 2013) (Section 502(a) (3), providing that a health-plan administrator may bring a civil action for "appropriate equitable relief" to enforce terms of a plan, does not authorize "appropriate equitable relief" at large but, rather, countenances only such relief as will enforce the terms of the plan or the statute).

There is a divergence of views between the district courts as to what constitutes actions taken "to enforce the terms of the plan."  In New Jersey, an entity seeking recoupment of benefits erroneously paid as the result of a medical provider's fraudulent claims submission is viewed as one acting in its own behalf, not one seeking to enforce the terms of a plan, and, therefore, not as a

fiduciary.  *Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Center,* 623 F.

Supp. 2d 568, 577 (D. N.J. 2009).  In that case, the insurer alleged – similar to United's allegations

here – that the provider waived coinsurance and deductible payments to induce the subscribers to use

its services.  The court held that ERISA did not completely preempt the claims, reasoning:

> As a purely factual matter, there is an appreciable difference between a health provider
> seeking reimbursement on behalf of plan participants based on ERISA benefit plans as
> opposed to a health care plan, in furtherance of its own business interests, seeking to protect
> its contractual agreements with in-network providers … Here, what is critical to plaintiff's
> claims is not what benefits the plan participants were entitled to under their ERISA plans
> but the relationship between plaintiff and its out-of-network and in-network providers …
> In pursuing these claims, Plaintiff does not seek to deny or control benefits as a fiduciary
> but rather, to protect the integrity of its two-tiered provider system.

*Id* at 577.  Under the *East Brunswick* approach, the plaintiff's motivation in initiating suit is key to

the question of  whether the plaintiff could, at some point in time, have brought the claim as a

fiduciary under § 502(a) (3).  *Accord: Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield

Ass'n*, 2011 WL 1626546 (N.D. Ill. 2011).

Other courts have taken a more expansive approach in defining who is a fiduciary for

purposes of § 502(a) (3).  For example, in *Blue Cross & Blue Shield of Rhode Island v. Korsen*, 746

F. Supp. 2d 375 (D. R. I. 2010), the district court summarily concluded that the insurance company

acted as fiduciary in bringing a recoupment claim against health care providers  who allegedly

miscoded services, simply because the company historically "define[d] permissible compensable

medial services; it determine[d] which services are medically necessary for its subscribers; and it

audit[ed]  medical providers to determine if their services are medically necessary and generally

accepted in the medical community."  The Rhode Island court found this conduct sufficient to give

the insurer standing as an ERISA fiduciary, reasoning that the statute did not draw any distinction  as

to whether the fiduciary conduct was directed or had an impact upon subscribers or other parties within the complex ERISA administrative mechanism, and without discussing the distinct, key concept of whether the insurer's action could reasonably be interpreted as that intended or designed "to enforce the terms of the plan."

In *Aflac, Inc. v. Bloom*, 948 F. Supp. 2d 1374 (M.D. Ga. 2013), the Georgia district court did focus on this motivational component of the statutory language, broadly reading it to encompass the action of the administrator of a self-funded ERISA group welfare plan in bringing suit to recover benefits erroneously paid to a physician based on his misrepresentations that he had provided medical services which in fact he did not provide. The court rejected the notion that the alleged fraud divorced the claims from the plan, concluding instead that Aflac acted on behalf of its employees, to enforce the terms of the plan, originally in making payments under the plan, and later in seeking to recover payments allegedly induced by fraud. Viewing the administrator's recoupment efforts "in substance" as actions undertaken in a fiduciary capacity to protect the plan, the court concluded that the administrator was acting as a "fiduciary," pursuing the type of injunctive relief authorized under §502(a)(3) in seeking recoupment of the payments and an injunction against the offending physician's future participation in the plan.

Relying on *Korsen* and *Aflac*, the defendant medical providers in this case contend that United, in essence, acts as a fiduciary in its pursuit of this lawsuit, which is a product of United's retroactive review of services performed by the defendants and its determination that those services were not authorized by the terms of the plans. Likening the attempt to recoup benefits wrongfully paid under the plans as the equivalent of an attempt to enforce the terms of the plans, and further likening United's reimbursement demands as the functional equivalent of an equitable restitution

11

claim, defendants contend that United could have brought these claims, at some point in time, as a fiduciary seeking equitable relief authorized under ERISA's expansive remedial scheme pursuant to § 502 (a) (3).

In advancing this view, defendants note that *Aflac* is expressly derived and partially based on the holding of the Eleventh Circuit in *Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir. 1990). In *Weitz,* the Eleventh Circuit summarily concluded, without analysis of the motive component of § 502(a) (3) ( authorizing suits brought by fiduciaries "to redress []plan] violations or … to enforce … the terms of the plan…"), that an ERISA-regulated plan seeking recoupment of compensation Paid under the terms of the plan for services not covered by the plan acted as a "fiduciary" in pursuit of "equitable relief" within the meaning of § 502 (a) (3). *Id.* at 1547 ("It is undisputed that Blue Cross is a fiduciary seeking the equitable remedy of restitution").

If *Weitz* is still good precedent – a questionable point in light of subsequent United States Supreme Court case law developments discussed, *infra*, its application here presumably would require the court to reject the New Jersey case-specific motivational approach to the classification of "fiduciary" action under §502 (a) (3) discussed above, and to label this litigation as that undertaken by United in a "fiduciary" capacity simply on the basis of its historic role as administrator of ERISA-regulated plans with discretionary authority, under many of the plans, to make final coverage determinations. Even if *Wietz* is interpreted to compel such a result, however, United's conduct still fails to satisfy the first prong of the *Davila* test because it is not made to appear that United seeks "equitable relief" to enforce the terms of the plans within the meaning of § 502(a) (3).

To the contrary, it appears that United's fraud-based claims for money damages could not have been brought under § 502 (a) (3), which only provides for "those categories of relief that were

typically available in equity," *Mertens v. Hewit Associates*, 508 U.S. 248, 113 S. Ct. 2063, 124 L.Ed.2d 161 (1993), i.e., the kinds of relief typically available in equity in the "days of the divided bench" before the merger of law and equity. *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013), which do not include legal claims for monetary damages. *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L.Ed.2d 635 (2002).

Urging a contrary result, defendants again rely on the Eleventh Circuit's 1990 decision in *Weitz* for the proposition that United's recoupment claims are appropriately characterized as equitable claims for restitution falling within reach of § 502 (a) (3)'s equitable remedy arm. However, *Weitz* was decided before the Supreme Court's more recent decision in *Serebroff v Mid-Atlantic Medical Services,* 547 U.S. 356, 126 S. Ct. 1869, 164 L.Ed.2d 612 (2006) and *US Airways, Inc. v. McCutchen*, ___ U.S. ___, 133 S. Ct. 1537, 185 L.Ed.2d 654 (2013). In *Serebroff,* the beneficiary of a plan received compensation damages through settlement of a tort action, following which the plan sought reimbursement pursuant to a provision of plan triggered where a beneficiary recovers compensation for injuries from third parties. Before the settlement, the plan asserted a lien, by mutual agreement, against a specific fund created in anticipation of settlement. The court concluded that the relief sought was "equitable" in nature because it sought to recover specifically identified funds in possession of the beneficiary, to wit, an investment account held by the beneficiary. Similarly, in *McCutchen,* the court reaffirmed its holding in *Serebroff* and permitted a health plan administrator to enforce its reimbursement clause by using § 502 (a) (3) to obtain specific funds that had been paid to beneficiaries in settlement of a third-party tort claim and placed in escrow by the beneficiary's attorneys pending resolution of the dispute.

The Second Circuit has interpreted *Serebroff* as specifically maintaining the requirement that

equitable restitution relief is, by definition, necessarily directed to specific funds in the defendant's possession, and reaffirming the holding in *Knudson* that damages are unavailable under § 502(a)(3) when the plaintiff does not seek to recover against a particular fund in possession of the defendant. *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006) (monetary compensation sought by former employee was not "equitable" relief within meaning of § 502(a)(3), even in an action against a fiduciary and even when accompanied by request for injunction requiring restoration of funds to a defunct 401(k) plan). *See also Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir.), *cert. den.*, 547 U.S. 1147 (2006) (restitutionary monetary relief was not "equitable" under section § 502(a)(3) where defendants never possessed the funds in question); *Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan*, 617 F. Supp. 2d 131 (E.D. N.Y. 2008); *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program*, 2011 WL 2413173 (D. N. J. 2011) (fiduciary who brings action under § 502(a)(3) may receive equitable relief, such as restitution in the form of a constructive trust or lien on money or assets fraudulently held by defendant, but cannot recover legal remedies, such as compensatory or punitive damages).

In this case, United does not seek to recover against a particular fund in possession of the defendants, and the defendants' attempt to cast this action as one for "equitable relief" accordingly fails. Because the individual remedies which United seeks are unavailable under ERISA's § 502(a)(3), *see Sereboff* and *McCutchen, supra,* it cannot be said that United, at some point in time, could have availed itself of the expansive remedies available under ERISA's enforcement scheme. Thus, United's fraud-based claims survive the first prong of the *Davila* test.

### 2.    Does no other legal duty support United's claims?

Finally, regardless of whether United enjoys status as a fiduciary capable of bringing these

fraud claims under § 502(a)(3) on behalf of plan participants or beneficiaries, to accomplish complete preemption defendants must also satisfy the second prong of the *Davila* test and demonstrate that there is no independent legal basis for United's state law claims. *Davila*, 542 U.S. at 212, 124 S. Ct. at 2488.  That is, the court must determine "whether an independent legal duty … is implicated by [the] defendants' actions." *Id.* at 210, 124 S. Ct. 2488.

Defendants contend no independent legal duty is implicated, because the recoupment claims exist only because of alleged improprieties (alleged fraudulent claims submissions by medical providers) in the administration of  ERISA-regulated benefit plans, and that no legal duties would exist between the parties but for the existence of ERISA-regulated plans under which the claims were processed.

The court disagrees.  United's fraud-based claims are based on duties which derive from Florida common law and statutes.  Those duties do not derive from rights and obligations established by the plans, and the ultimate resolution of those claims will not require an interpretation or analysis of the terms of any ERISA-regulated plan.  The question posed by United's fraud-based claims is whether defendants fraudulently manipulated patient diagnoses and miscoded procedures actually performed on patients in order to mask the delivery of uncovered services (spinal MUAs) as covered services (other MUAs) in order to fraudulently induce United to pay benefits for the delivery of such services. Defendants had a common law and statutory duty to refrain from making misrepresentations in the presentation of insurance claims for benefits.  The obligation to meet that duty is not dependent on the terms of any ERISA plan, and arises independently from any contractual duties imposed by ERISA.  Thus, plaintiff's fraud-based claims survive the second prong of *Davila* preemption. *See Pasack Valley Hosp. v. Local 464 UFC Welfare Reimbursement Plan*, 388 F.3d 393

(3d Cir. 2004).

Accordingly, the court concludes United's claims are not completely preempted by ERISA because they do not duplicate, supplement or supplant the ERISA civil enforcement remedy.

### 2. Express Preemption (Conflict Preemption)

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a).  State laws include "all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144 (c) (1).  The statute does not define the term "relate to," a task  necessarily left to the courts for determination in the context of facts that arise in each particular case.

In determining whether United's fraud-based state claims "relate to" ERISA, the court addresses two issues:  (1) whether the benefit plans involved qualify as ERISA "employee  benefit plan," and (2) whether  plaintiff's  fraudulent inducement claims "relate to" those plans.  *See generally Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48, 107 S. Ct. 1549, 95 L.Ed. 2d 39 (1987) (ERSIA's preemption clause reaches not only those laws specifically designed to affect employee benefit plans, but also common law causes of action that "relate to" employee benefit plans).  A law "relates" to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan.  *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S. Ct. 2890, 77 L.Ed.2d 490 (1983).

In *Pilot Life*, court first addressed the issue of whether ERISA preempts state common law tort and contract claims.  After discussing the legislative history and emphasizing statute's broad preemptive intent, the court held that the plaintiff's state law claims, each "based on alleged improper processing of a claim for benefits under an employee benefit plan" met the criteria for preemption.

Subsequently, in *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995), the Supreme Court refined this broad approach by narrowing the "relates to" concept to require a showing of a "connection with" an ERISA plan, holding, in the case before it, that state laws which govern general healthcare regulation and affect ERISA plans only by means of indirect economic effects are not preempted. Following this precedent, the Fifth Circuit has found that Congress did not intend for ERISA preemption to extend to state law tort claims brought against an insurance agent on theory such claims do not affect relations among principal ERISA entities as such, and therefore do not have a "connection with" an ERISA plan. *See Perkins v. Time Ins. Co*., 898 F. 2d 470, 473 (5th Cir. 1990).

Expressly approving and adopting the rationale of *Perkins*, the Eleventh Circuit has held that an individual's state law claims against an insurance agent and his agency for fraudulent inducement to purchase and negligence in the processing of an application for an ERISA-governed insurance plan did not have sufficient connection with the plan to "relate to" the plan, and thus did not fall within ERISA's broad preemptive scope. *Morstein v. National Ins. Services, Inc.,* 93 F.3d 715 (11th Cir. 1996).

Using the "connection with" analysis outlined in *Morstein*, this court must now determine whether any of the state law claims brought by United in this case have sufficient "connection with" an ERISA-regulated plan so as to "relate to" the plan. The court has already determined that United is not a plan beneficiary, participant, or fiduciary. Further, it is apparent that United is not bringing its fraud-based claims against any ERISA entities (consisting of the employer, the plan, the plan fiduciaries and the beneficiaries under a plan); rather, it is asserting its claims against health care providers and billing agencies which allegedly defrauded it by submitting false claims under the

17

plans. United's claims thus do not charge an ERISA entity with an alleged improper administration of an ERISA plan, or mishandling of plan benefits; rather, as in *Morstein,* this case involves state law tort claims lodged solely against non-ERISA entities - claims which do not have sufficient connection with ERISA-based plans to "relate to" the plans for purposes of ERISA conflict preemption.

Because United is not charging an ERISA entity with improprieties under an ERISA plan, and because its state law claims do not have a nexus with an ERISA plan or a plan's benefit system in the sense the claims are based on the failure of a plan to pay covered benefits, c*ompare Variety Children's Hospital, Inc. v. Century Medical Health Plan, Inc*., 57 F.3d 1040 (11th Cir. 1995), the court concludes that United's claims do not have sufficient "connection with" an ERISA-regulated plan to "relate to" such a plan and trigger ERISA preemption. *See Morstein,* 93 F.3d at 723. *Compare Jones v. LMR Intern., Inc*., 457 F.3d 1174 (11th Cir. 2006) (employees' state law claims against employer and insurance company for fraud, breach of contract, civil theft, unjust enrichment, and negligence arising out of cancellation of health insurance held "related to" and preempted by ERISA); *Parkman v. Prudential Ins. Co. of America*, 439 F.3d 767 (8th Cir. 2006) (fraud claim against plan administrator and employer based on administrator's mishandling of claim for long term disability benefits held preempted by ERISA) with *Butero v. Royal Maccabees Life Ins. Co*., 174 F.3d 1207, 1212 (11th Cir. 1999) (relief is available under ERISA civil enforcement mechanism only when defendant is an ERISA entity); *Forbus v. Sears, Roebuck & Co*., 30 F.3d 1402 (11th Cir. 1994) (retired employees' fraud claim against former employer based on alleged misrepresentations concerning closing of facility at which they worked involved fraud concerning elimination of employees' jobs rather than fraud concerning ERISA plan, and hence did not "relate to" ERISA plan

18

for purposes of ERISA preemption).  Accordingly, the defendants' motion to dismiss based on

ERISA conflict preemption shall be denied.

## B.  FAILURE TO STATE A CLAIM

### 1.  § 627.6131 (6) (b), Fla. Statutes is not applicable to the claims in this case.

Defendants alternatively assert § 627.6131(6), Fla. Stat., as a basis for dismissal of all claims as

time-barred.  This statutory provision is contained under Chapter 627, Florida Statutes, "Insurance

Rates and Contracts," Part VI, "Health Insurance Policies," and provides in relevant part:

> (6) If a health insurer determines that it has made an overpayment to a provider for services
> rendered to an insured, the health insurer must make a claim for such overpayment to the
> provider's designated location.  A health insurer that makes a claim for overpayment to a
> provider under this section shall give the provider a written or electronic statement
> specifying the basis for the retroactive denial or payment adjustment.  The insurer must
> identify the claim or claims, or overpayment claim portion thereof, for which a claim for
> overpayment is submitted.
>
> (a)  If an overpayment determination is the result of retroactive review or audit of coverage
>     decisions or payment levels not related to fraud, a health insurer shall adhere to the
>     following procedures:
>
>   1. all claims for overpayment must be submitted to a provider within 30 months after the
>      health insurer's payment of the claim….
>      ….
> (b) A claim for overpayment shall not be permitted beyond 30 months after the health
>     insurer's payment of a claim, except that claims for overpayment may be sought beyond
>     that time from providers convicted of fraud pursuant to s. 817.234.

§ 627.6131(6), Fla. Stat.

Defendants argue that § 627.6131 (6) (b) precludes all of United's fraud-based claims in this

action as time-barred because it has not and cannot allege that any of the provider-defendants to this

cause have been convicted of fraud under § 817.234.  The court rejects this argument, as it is

apparent that the statutory provision in question -- which falls under Part VI of Florida Chapter 627,

Insurance Rates and Contracts -- governs individual, and not group, health insurance policies issued

for delivery in this state.

Thus, § 627.601, Fla. Stat., "Scope of this part," provides in pertinent part:

Nothing in this part applies to or affects:
….
(2) Any group or blanket policy, except as provided in ss. 627.648-627.6499.

In turn, § 627.602, Fla. Stat., captioned "Scope, format of policy," provides in pertinent part:

(1) Each health insurance policy delivered or issued for delivery to any person in this state must
   comply with all applicable provisions of this code and all of the following requirements:
.....

 (c) The policy may purport to insure only one person, except that upon the application of an
    adult member of a family, who is deemed to be the policyholder, a policy may insure, either
    originally or by subsequent amendment, any eligible members of that family, including
    husband, wife any children or any person dependent upon the policyholder…

In contrast, group health policies are governed by the provisions of Part VII of Chapter 627,

Florida Statutes, "Group, Blanket and Franchise Health Insurance Policies," which specifically

excepts from the scope of its application any plan established or maintained by an individual

employer in accordance with ERISA.  § 627.651 (4), Fla. Stat.

Here, the defendants maintain that the claims at issue were made  under group health insurance

plans governed by ERISA.  (United's complaint does not clearly allege whether the claims involved

were processed under individual or group health policies).  If the plaintiff's claims for recoupment

of fraudulently-induced plan benefits payments derive solely from group health plans, the cited

Florida statute governing recoupment of overpayments (non-fraud and fraud related) made pursuant

to individual health policies is facially inapplicable.  Therefore, the court shall deny the motion to

dismiss all claims under § 627.611(6) (b), without prejudice for defendant to reassert this issue at a

later stage in the proceedings  in connection with any individual health insurance policy governed by

Subpart VI of Chapter 627, Florida Statues which it contends is involved in this action.

   **2.  The complaint states a claim under Florida's civil theft statute.**

   Defendants assert that United's statutory claims under Florida's civil theft statute fail as a matter

of law under the statutory exemption for the provision of health care.

   Florida's civil theft statute, § 772.11, Fla. Stat., provides in pertinent part:

   (1) Any person who proves by clear and convincing evidence that he or she has been injured in
       any fashion by reason of any violation of 812.012-812.037 or 825.103(1) has a cause of
       action for threefold the actual damages sustained….
       ….

   (3) This section does not impose civil liability regarding the provision of health care,
       residential care, long-term care, or custodial care at a licensed facility or care provided
       by *appropriately licensed personnel* in any setting in which *such personnel are
       authorized to practice.*

§ 772.11 (3), Fla. Stat. (emphasis added).

   In this case, United charges that the surgical MUA procedures in question were performed by

chiropractors who are expressly prohibited from performing surgery under Florida law.  Thus, the

complaint is based on services allegedly performed by persons who were not "appropriately

licensed" to perform the services, and who performed the procedure in a setting in which they were

allegedly not "authorized to practice."  Accordingly, the health care exemption to Florida's civil theft

statute is, by its terms, inapplicable to the instant claims.

### III. CONCLUSION

   The court has reviewed the defendants' remaining challenges to the viability of claims

asserted by United, including the alleged failure to conform to the pleading with specificity

requirements of the Rules of Civil Procedure, and finds them to be without merit.

It is accordingly **ORDERED AND ADJUDGED**:

The defendants' motion to dismiss United's amended complaint [ECF 151] is **DENIED.**

The defendants shall file their answer to the amended complaint within **FIFTEEN (15) DAYS** from the date of entry of this order.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 6th day of March, 2014.

                              Daniel T. K. Hurley
                             United States District Judge

cc. all counsel

                            For updated court information, visit unofficial website
                                          at www.judgehurley.com